IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAREL HARDENBROOK, et al, )<br>　　　　　　Plaintiffs, )<br>vs. )<br>UNITED PARCEL SERVICE, CO., )<br>　　　　　　Defendant. ) | Case No. CV07-509-S-EJL<br><br>MEMORANDUM ORDER |

Pending before the Court in the above-entitled matter is Defendant's Motion for Summary Judgment.[1] The parties have filed their briefing on the motion and the matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument. Local Rule 7.1.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 2, 2007, Plaintiffs Darel Hardenbrook, Paul Gooch, and Robert Orloff, filed a complaint in state court against their employer Defendant United Parcel Service, Co. ("UPS") alleging retaliation in violation of Idaho public policy, breach of contract, and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 1, Att. 2). On December 5, 2007, UPS removed the case to this Court on diversity grounds. (Dkt. No. 1). The dispute between the parties relates

---

[1] Plaintiffs have filed a motion to strike (Dkt. No. 72) that has been referred to the Magistrate Judge. Plaintiffs have also filed a motion to amend the complaint to add punitive damages that was denied by the Magistrate Judge. Plaintiffs have filed an objection to the denial of the motion. The Court will take up this objection in a separate order after the matter is fully briefed.

MEMORANDUM ORDER - Page 1
09ORDERS\HARDENBROOK

to employment actions taken by UPS as to each of the Plaintiffs; Plaintiff Gooch and Plaintiff Hardenbrook were terminated and Plaintiff Orloff was demoted.

At the time in question, Plaintiff Orloff was the UPS Idaho Division Manager, Plaintiff Gooch was a Supervisor in the Boise Center, and Plaintiff Hardenbrook was a Supervisor in the Nampa Center.[2] (Dkt. No. 40, Att. 2). Plaintiffs allege that UPS' employment actions against them were made in retaliation to their inquiries regarding the Department of Transportation's ("DOT") hours of service regulations set forth in Title 49, Part 395 of the Code of Federal Regulations. (Dkt. No. 1, Att. 2, p. 2). The DOT regulations prohibit drivers of commercial vehicles from driving if they have exceeded a specified number of work hours for a prescribed period of time. UPS denies the allegations and has filed the instant motion for summary judgment. (Dkt. Nos. 40).

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[3]

---

[2] A Supervisor is "first-level management" at UPS who reports to the center manager. A Division Manager, such as Plaintiff Orloff, was two levels higher than Plaintiff Gooch and Plaintiff Hardenbrook.

[3] See also, Rule 56(e) which provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER - Page 2
09ORDERS\HARDENBROOK

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989). When applying this standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

On Friday, December 16, 2005, Scott Barker, the West Region Health and Safety Manager, sent an email to certain UPS managers reminding them of the DOT hours of service regulations. (Dkt. No. 40, Att. 2). This email was then forwarded by Brad Whitworth, Health and Safety Manager for the Great Basin District, to other UPS managers, including Jeff Proost who in turn, on Saturday, December 17, 2005, sent the email area supervisors, including Plaintiffs Gooch and Hardenbrook. (Dkt. No. 40, Att. 2). The email contained information regarding the hours of service DOT regulations and reminders from upper management that the information needed to be posted and all employees were required to comply with the regulations.

After receiving the emails, Plaintiff Hardenbrook called Plaintiff Gooch to discuss into whether the regulations applied to their positions as supervisors. (Dkt. No. 42, Ex. 4, pp. 63-65), (Dkt. No. 43, Ex. 4, p. 159). Following that discussion, on December 17, 2005, Plaintiff Gooch sent an email to Mr. Whitworth seeking clarification regarding whether the DOT regulations applied to supervisors. Plaintiff Gooch's email indicated that he had worked in excess of eighty hours that week, which is over the DOT limit, and that he and other supervisors were concerned about whether the DOT regulation applied to supervisors. The email stated:

> Brad,
> I have had a lot of sups question me about supervisor hours and if our hours are a concern when it comes to DOT hours. I know that this time of year there are a lot of us that shuttle packages, do pick ups or run routes. I do not even know if this

> pertains to us but with Saturday the 24th coming up and the possibility of may sups having to deliver and shuttle packages this may be something that we need to address in the District. I have heard at least one sup say it was his responsibility to report any possible violations even if they were his partners (I still don't think he would). I just don't want to get myself in trouble if I were ever questioned. I will have over 80 hours this week but I have always been under the understanding that since I don't drive everyday that I can still drive when needed. Please help. Thanks Gooch.

(Dkt. No. 42, Ex. 12). When Mr. Whitworth did not respond by the next work day, on December 20, 2005, Plaintiff Gooch resent the email. Mr. Whitworth replied in the afternoon of December 20, 2005 stating "I'm not ignoring you, I'm trying to pin the region down for a response. If I don't hear tomorrow, I'll give you m[y] take...." (Dkt. No. 42, Ex. 12). On Thursday, December 22, 2005, Plaintiff Gooch sent another email to Mr. Whitworth stating:

> Brad,
> based on how far behind we are in the air. I am sure every management person in Idaho will be delivering Saturday. I guess the biggest question we have is if we are involved in any type of accident and the fact comes out that we have worked 80 plus hours the previous 7 days are we liable for a fine? If no one there can answer this, I can notify DOT today to at least ask them their take so I can let all the sups asking, know that we will not be fined. Thanks, Gooch

(Dkt. No. 42, Ex. 12). Mr. Whitworth spoke with Rich Moore, the District Manager, regarding Plaintiff Gooch's emails. Mr. Moore in turn spoke with Ron Kenney, the District Human Resources Manager, who expressed concern over the fact that Plaintiff Gooch's first email indicated he was out of compliance with the DOT regulations. UPS contends that Mr. Kenney and Mr. Moore decided that Plaintiff Gooch should be sent home because he had worked more hours than allowed under the DOT regulations. (Dkt. No. 42, Ex. 6, p. 189) (Dkt. No. 42, Ex. 7, p. 145). Mr. Moore called Plaintiff Orloff and instructed him to send Plaintiff Gooch home and tell Plaintiff Gooch to call Mr. Moore the following Tuesday after the holidays. (Dkt. No. 42, Ex. 8, pp. 181-83). Mr. Kenney also called Plaintiff Orloff and told him that he was to send Plaintiff Gooch home. (Dkt. No. 42, Ex. 8, pp. 184-85). Plaintiff Orloff testified that he knew nothing about the emails until he was contacted by, Mr. Moore and Mr. Kenney, and that he was "blindsided" by their direction to have Plaintiff Gooch sent home. (Dkt. No. 42, Ex. 8, p. 181-85).

Plaintiff Gooch testified that he was told to report to Jeff Proost's office which he did in the morning of December 22, 2005 and found Mr. Proost and Plaintiff Orloff waiting for him. (Dkt. No. 43, Ex. 4, p. 175) (Dkt. No. 43, Ex. 1, p. 208). Plaintiff Orloff told Plaintiff Gooch to go home and

MEMORANDUM ORDER - Page 4
09ORDERS\HARDENBROOK

to call Mr. Moore the following Tuesday. (Dkt. No. 43, Ex. 1, p. 209). Plaintiff Gooch alleges he was told to call Mr. Moore to see whether he "still had a job." (Dkt. No. 43, Ex. 4, P. 176). As directed, Plaintiff Gooch testified that he called Mr. Moore from his home on the morning of Tuesday, December 27, 2005 and asked him if he could "go back to work?" (Dkt. No. 42, Ex. 3, p. 179). Plaintiff Gooch testified he was "begging" for his job and that Mr. Moore asked him if he was ready to be a "team player" and why he had threatened to call DOT. (Dkt. No. 43, Ex. 4, pp. 179-81). Mr. Moore, however, testified that he wanted Plaintiff Gooch to call him to see "what he was thinking" in terms of why he felt he could not go to his local area managers and why he said he was going to the DOT. (Dkt. No. 42, Ex. 7, p. 142).

Upon discovering that Plaintiff Gooch had been sent home, Plaintiff Hardenbrook called Mr. Whitworth and told him that he had asked Plaintiff Gooch to inquire about the DOT regulation. (Dkt. No. 42, Ex. 4, pp. 70-73); (Dkt. No. 43, Ex. 3, pp. 70-74). Plaintiff Hardenbrook claims he also asked his own immediate supervisor, Mike Stack, about the issue. (Dkt. No. 42, Ex. 4, p. 99). On December 23, 2005, Plaintiff Hardenbrook also told Mr. Stack that he had worked over eighty-five hours that week and was still driving. (Dkt. No. 43, Ex. 3, pp. 89-92, 95-96). The next day, Mr. Stack directed Plaintiff Hardenbrook to drive another employee's route, which he did resulting in his working ninety-six total hours for that week. (Dkt. No. 43, Ex. 3, pp. 97-98).

On June 28, 2006, Plaintiff Hardenbrook again raised the issue of violations of the hours of service regulations in his response to a Business Ethics Questionnaire ("BEQ"). (Dkt. No. 42, Ex. 19).[4] Question 18 of the Questionnaire asks:

> Have you violated or are you aware of any violations of UPS Business Conduct and Compliance policies (UPS Freight employees – UPS Ethics and Business Conduct Policy?).

Plaintiff Hardenbrook answered "yes" to this question and, he contends, he cited the email from Plaintiff Gooch to Mr. Whitworth. (Dkt. No. 42, Ex. 19); (Dkt. No. 42, Ex. 4, p. 186-189); (Dkt. No. 43, Ex. 3, pp. 187). Plaintiff Gooch similarly filled out the Questionnaire but he answered "no" to question 18. (Dkt. No. 42, Ex. 19). On July 24, 2006, Plaintiff Hardenbrook was terminated. UPS claims his termination was for insubordination and improper use of UPS equipment. Plaintiff

---

[4] The Questionnaire is an "online, web-based survey distributed to UPS managers all over the world as a component of UPS' compliance program on a yearly basis." (Dkt. No. 40, Att. 2).

MEMORANDUM ORDER - Page 5
09ORDERS\HARDENBROOK

Hardenbrook claims his termination was because of his involvement in the December 2005 inquiries of the DOT violations which he had again brought up in this June 28, 2006 BEQ.

During the same week of July of 2006, Plaintiff Gooch was terminated and Plaintiff Orloff was demoted to a supervisor in the Nampa Center; Plaintiff Orloff remains a UPS employee today. UPS claims these employment actions were the result of an investigation into timecard irregularities in the UPS center in Nampa, Idaho. Plaintiff Gooch and Plaintiff Orloff both claim to have no knowledge of the timecard irregularities and assert they were retaliated against because of the December of 2005 emails regarding the DOT regulations. The Plaintiffs argue that Mr. Moore ordered Plaintiff Orloff's demotion in retaliation for his inability to control "troublemakers," referring to Plaintiff Gooch's and Plaintiff Hardenbrook's December of 2005 complaints.

Each of the Plaintiffs argue these retaliatory employment actions violate Idaho public policy, are in breach of their employment contract with UPS, and breach of the implied covenant. UPS denies the allegations.

I.   Violation of Idaho Public Policy

In Idaho, unless the employer has agreed to a specific length or term of employment and has agreed to restrictions on the reasons and/or timing for which employment can be terminated, an employee is presumed to be "at-will." See Thomas v. Medical Center Physicians, 61 P.3d 557, 563 (Idaho 2002). "Generally, an employer may discharge an at-will employee at any time for any reason without incurring liability." Van v. Portneuf Medical Center, 212 P.3d 982, 991 (Idaho 2009) (citing Jenkins v. Boise Cascade Corp., 108 P.3d 380, 387 (Idaho 2005)). The right to discharge an at-will employee is limited, however, by public policy considerations; such as when the motivation for the firing contravenes public policy. Van, 212 P.3d at 991 (citing Mallonee v. State, 84 P.3d 551, 557 (Idaho 2004)). "An employer may not discharge an at-will employee without cause when the discharge would violate public policy." Van, 212 P.3d at 991; see also Mallonee, 84 P.3d at 557-58 (citing Crea v. FMC Corporation, 16 P.3d 272 (2000)).

"The determination of what constitutes public policy sufficient to protect an at-will employee from termination is a question of law." Van, 212 P.3d at 991; see also Mallonee, 84 P.3d at 557 (citation omitted). "The public policy exception to the employment at-will doctrine has been held to protect employees who [1] refuse to commit unlawful acts, [2] who perform important public obligations, or [3] who exercise certain legal rights and privileges." Id. "Public policy of the state

is found in the constitution and statutes. The public policy expressed therein may serve as a basis for finding an exception to the employment at-will doctrine." Mallonee, 84 P.3d at 557 (citation omitted). "Once the court defines the public policy, the question of whether the public policy was violated is one for the jury." Van, *supra* (citing Smith v. Mitton, 104 P.3d 367, 374 (Idaho 2004)).

Here, UPS challenges the Plaintiffs' claim that the legal determination of public policy focuses on the employer's motivation. UPS contends that the Plaintiffs must first show that they were engaged in some kind of public policy type activity before the Court is required to consider the employer's motivation. The language used by the Idaho Supreme Court in Mallonee states "[t]he right to discharge an at-will employee may be limited by considerations of public policy, such as when the motivation for the firing contravenes public policy." Mallonee, 84 P.3d 551, 557 (Idaho 2004) (citing Jackson v. Minidoka Irrigation Dist., 563 P.2d 54, 57 (Idaho 1977). This language was also used in the more recent Van opinion. See Van, *supra*. This suggests that the employer motivation impacts the public policy determination. However, in those cases, as well as other cases, the Idaho Supreme Court has employed a two-part inquiry for making the public policy exception determination asking: 1) whether there is a public policy and 2) whether the employee's behavior is protected under the public policy exceptions. See Thomas, 61 P.3d at 565. This Court will do the same here, considering first whether a public policy is at play and then, second, whether the Plaintiffs conduct is protected under the public policy exception.

UPS argues the Plaintiffs have not engaged in any protected acts such as refusing to commit unlawful acts, performing important public obligations, or exercising certain legal rights and privileges. Plaintiffs counter that their reporting of DOT regulation violations fall within the public policy exception.

    A.    <u>Plaintiff Orloff's Claim of Retaliation in Violation of Idaho Public Policy</u>

        1.    <u>Wrongful Demotion Claim Recognized in Idaho</u>

UPS argues Plaintiff Orloff's claims must be dismissed because Idaho does not recognize a claim for wrongful demotion. UPS cites to cases from various other states in support of this claim and also argues that the Idaho Supreme Court has narrowly interpreted the public policy exception. Plaintiff Orloff disagrees, contending that although Idaho may not have recognized a wrongful demotion claim, it has also not rejected the existence of such a claim. (Dkt. No. 54, p. 3). The Idaho Supreme Court, Plaintiff Orloff argues, focuses on the employer's motivation and where, as here,

MEMORANDUM ORDER - Page 7
09ORDERS\HARDENBROOK

that motivation violates public policy, it is unlawful. Further, he asserts, "the clear message from the Idaho Supreme Court regarding the public policy exception to at-will employment is that it is intended to protect employees from actions by employers which are motivated by reasons that contravene established Idaho public policy." (Dkt. No. 54, p. 5). Plaintiff Orloff maintains there is "simply no practical difference between demoting an employee for a reason which contravenes public policy and firing that employee." (Dkt. No. 54, p. 6). The Court need not resolve this question in light of its ruling as to Plaintiff Orloff below.

### 2. Retaliation Claim in Violation of Idaho Public Policy

Plaintiff Orloff alleges he was demoted for failing to keep Plaintiff Gooch and Plaintiff Hardenbrook under control and preventing their inquiries regarding the DOT regulations. The focus of Plaintiff Orloff's claim is based mainly on comments made by Mr. Moore to all three Plaintiffs which, he alleges, evidence that his demotion was in retaliation for the actions of Plaintiff Gooch and Plaintiff Hardenbrook in pressing the issue of supervisors violating the DOT hours of service regulations and Plaintiff Orloff's failure to prevent that conduct. (Dkt. No. 54, pp. 15-16). If the Idaho State Courts were to recognize a claim for wrongful demotion, Plaintiff Orloff's claim does not alleged any actions by Plaintiff Orloff that would qualify him for the public policy exception.

Starting with the first part of the public policy inquiry, the Court finds there is a protectable public policy in favor of reporting violations of legal requirements. See Thomas, 61 P.3d at 565 (protecting doctor's complaints of another doctor's improper conduct) (citing Ray v. Nampa Sch. Dist. No. 131, 814 P.2d 17 (Idaho 1991) (protecting reports of electrical building code violations); Sorensen v. Comm Tek, Inc., 799 P.2d 70, 74 (Idaho 1990) (statutory violation); Crea, 16 P.3d at 275 (reports of wrongful conduct)). As to the second part of the inquiry, the Court finds the actions alleged by Plaintiff Orloff are not protected under the public policy exception.

Plaintiff Orloff did not know of Plaintiff Hardenbrook or Plaintiff Gooch's alleged "reports" of violations of DOT regulations. Thus, he has not raised facts that would support application of the public policy exception to his employment claims. As UPS points out, Plaintiff Orloff testified that he did not know of Plaintiff Gooch's email inquiries regarding the DOT regulations and he was surprised when he was contacted by management and told to send Plaintiff Gooch home. (Dkt. No. 42, Ex. 8, pp. 181-85). Because he did not know of the alleged reports of DOT violations, Plaintiff Orloff did not engage in protected behavior. The fact Mr. Moore was angry over the conduct of

MEMORANDUM ORDER - Page 8
09ORDERS\HARDENBROOK

Plaintiff Hardenbrook and Plaintiff Gooch does not establish a claim on behalf of Plaintiff Orloff. The employer's motivation in taking an employment action does not create a retaliation claim where, as here, the employee has not alleged to have known of the protected behavior of his subordinates let alone engaged in the protected behavior.

Plaintiff Orloff makes a further claim that his demotion was because he should have known about Mr. Gooch and Plaintiff Hardenbrook's actions and should have prevented them from reporting unlawful activity. He argues the public policy in reporting unlawful activities should extend to his role as a supervisor and that he should not be adversely impacted for not knowing of and not preventing his subordinates from reporting violations. Even if UPS demoted Plaintiff Orloff for failing to know of the actions of his subordinates, it still does not put Plaintiff Orloff's conduct into any protected activity. There is no public policy precluding UPS from taking employment action against a supervisor for failing to stay informed of their subordinates concerns or conduct. As to whether there is a public policy exception for failing to prevent lawful reporting of regulation violations, the facts here do not support such a scenario. Because Plaintiff Orloff testified that he did not know of the inquiries in December of 2005, he did not engage in any conduct one way or another regarding the inquires. As such, the motion for summary judgement is granted as to Plaintiff Orloff's claim of retaliation in violation of Idaho public policy.

  B. <u>Plaintiff Gooch and Plaintiff Hardenbrook's Claims of Retaliation in Violation of Idaho Public Policy</u>

Again as to the first part of the inquiry, the reporting of violations of DOT regulations is a strong public policy falling within the exception. <u>See</u> <u>Thomas</u>, <u>Sorensen</u>, and <u>Crea</u> *supra*. The question as to Plaintiff Gooch and Plaintiff Hardenbrook turns on the second part of the inquiry; whether their conduct for which they were allegedly terminated is protected. UPS argues neither Plaintiff Gooch nor Plaintiff Hardenbrook actually reported, or intended to report, any violations of DOT regulations. Their emails were instead merely inquiries about the application of the DOT regulations to their supervisory positions. Moreover, UPS maintains that neither Plaintiff Gooch or Plaintiff Hardenbrook were terminated in July of 2006 because of the events of December of 2005.

Both Plaintiffs maintain their conduct is within the public policy exception which is designed to protect employees. (Dkt. No. 54, pp. 12-13). Plaintiffs state "they have alleged retaliation for

MEMORANDUM ORDER - Page 9
09ORDERS\HARDENBROOK

issues related to violations of federal and state law relating to hours of service limitations on employees driving commercial vehicles." (Dkt. No. 54 p. 13). Their complaints to supervisors within the company, Plaintiffs allege, are enough to establish retaliation. Finally, Plaintiffs argue the lapse of time between the December, 2005 inquiries and their July, 2006 terminations does not prevent the establishment of causation between the protected conduct and the retaliation.

        1.      <u>Plaintiff Gooch</u>

Plaintiff Gooch argues he reported the DOT regulations violations by emailing his superior, Mr. Whitworth, and telling him that he and other supervisors were, or were going to, exceed the DOT hours of service regulations. The Court agrees. The Idaho Supreme Court has clearly held that "an employee who reports wrongful conduct that is protected under the public policy exception is protected by reporting the conduct to superiors within the company." <u>Thomas</u>, 61 P.3d at 565. Here, Plaintiff Gooch's emails to Mr. Whitworth on December 17, 2005 and December 20, 2005 both stated that he, and likely other supervisors, were or would soon exceed the DOT hours of service regulations.

UPS claims the emails did not provide it with notice because it was unclear whether Plaintiff Gooch was in violation of the DOT regulations or only anticipated that he would be by the weekend. The Court finds this argument to be contrary to the testimony of Mr. Moore and Mr. Kenney who both stated they told Plaintiff Orloff to send Plaintiff Gooch home because he was over the DOT hours of service regulations. (Dkt. No. 42, Ex. 6, p. 189) (Dkt. No. 42, Ex. 7, p. 145). In fact, UPS relies heavily on this reasoning for sending Plaintiff Gooch home in its defense to the claims that it retaliated. UPS cannot claim on the one hand that it had no notice and then claim, on the other hand, that it sent Plaintiff Gooch home because of his email that he was over the DOT regulations hour limit. It can only be one or the other. Based on the testimony of the defense witnesses, Mr. Moore and Mr. Keeney, UPS had notice of Plaintiff Gooch's DOT hours of service violation report based on his email reporting it to his superior. <u>See</u> <u>Thomas</u>, 61 P.3d at 565. As such, the Court finds Plaintiff Gooch engaged in conduct falling within the public policy exception. Whether the public policy exception was violated, including whether or not UPS terminated Plaintiff Gooch in retaliation for the December 2005 reports of DOT regulations, are questions for the jury. As such, the Court will deny the motion for summary judgment against Plaintiff Gooch as to Count One.

### 2. Plaintiff Hardenbrook

UPS argues the Plaintiff Hardenbrook never reported any DOT violation sufficient to support a claim for retaliation and his BEQ responses were not reports nor did they put UPS on notice of any reports of DOT regulations violations. Plaintiff Hardenbrook asserts it is a question of fact for the jury to decide whether or not UPS received his full BEQ response. Based upon the facts as alleged by Plaintiff Hardenbrook, the Court finds a question of fact exists as to whether he was engaged in any activity covered by Idaho's public policy exception. There is some indication that Plaintiff Hardenbrook raised the issue regarding DOT violations in the June 2006 BEQ. (Dkt. No. 42, Ex. 19). Whether or not Plaintiff Hardenbrook's answer and UPS' later follow-up amounts to actions falling within the public policy exception cannot be determined based on the record before the Court at this time. It is disputed as to what was revealed to UPS as a result of the BEQ response let alone whether it amounts to conduct within the public policy exception. (Dkt. No. 42, Ex. 19). Further, Plaintiff Hardenbrook testified that he called his superiors, Mr. Whitworth and Mr. Stack, to tell them he had asked Plaintiff Gooch to inquire about the DOT regulations and that he had also worked hours in excess of the DOT regulations. (Dkt. No. 42, Ex. 4, p. 70-73, 99); (Dkt. No. 43, Ex. 3, pp. 70-74, 89-92, 95-96). Such action is akin to that taken by Plaintiff Gooch that the Court has deemed to be within the public policy exception. Whether UPS's termination of Plaintiff Hardenbrook's employment was in retaliation for his actions in relation to the DOT regulations or for some other reason also involves a question of fact. As such, the Court will deny the motion on this claim as to Plaintiff Hardenbrook.

## II. Breach of Employment Contract

When all three Plaintiffs were first hired by UPS they were part-time hourly employees and union members; which is typical for UPS new employees. As members of the International Brotherhood of Teamsters, their employment was subject to the terms and conditions of a Collective Bargaining Agreement ("CBA") between UPS and the Teamsters. (Dkt. No. 40, Att. 2). The CBA provides that a union employee may only be discharged for just cause, subject to only a few limited exceptions. (Dkt. No. 40, Att. 2). Thereafter, the Plaintiffs were each promoted to management, non-union positions and were no longer under the terms of the CBA. As such, UPS argues the

Plaintiffs all became at-will employees and that nothing in the UPS policies or employee manual create different terms of employment.

"Unless an employee is hired pursuant to a contract that specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability." Jenkins v. Boise Cascade Corp., 108 P.3d 380, 387 (Idaho 2005) (citations omitted). "[A]n employment contract is presumed to be at-will unless 'the parties ... agree to a contract term limiting the right of either to terminate the contract at will.'" Id. (citation omitted). "[T]he presumption of an at-will employment relationship can be rebutted when the parties intend that an employee handbook or manual will constitute an element of an employment contract. Whether the presumption is rebutted is normally a question of fact, unless an employee handbook specifically negates any intention on the part of the employer to have it become a part of the employment contract." Id. (citations omitted). Such an intention may be express or implied and an employee's handbook can constitute an element of the contract. Harkness v. City of Burley, 715 P.2d 1283, 1286 (Idaho 1986). "A limitation will be implied when, from all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either party's right to terminate the relationship was limited by the implied in fact agreement." Jenkins, 108 P.3d at 388 (citation omitted).

Here, the Plaintiffs' argue "there are specific facts to support a finding that UPS made promises to its employees that created an exception to the general at-will employment policy" that employees will not be subject to retaliation or retribution for reporting violations of UPS standards, laws, or expressing concerns or raising questions about the same. This "anti-retaliation policy," Plaintiffs maintain, is contained in: 1) the UPS Compliance Standards and Procedures Manual requirement that all employees comply with UPS's Code of Business Ethics; 2) the UPS Non-Retribution Policy; and 3) other statements by UPS's management. In response, UPS points to its Code of Business Conduct and a Policy Manual both of which, have disclaimers that they are not intended to create a contract of employment. (Dkt. No. 41, Exs. 1, 2).[5] "Whether the presumption

---

[5] The Affidavit of Jon Robertson (Dkt. No. 41) and Exhibit 1 attached to that Affidavit are the subject of the Plaintiffs' motion to strike. (Dkt. No. 72). This motion was referred to the Magistrate Judge and denied. (Dkt. No. 83).

[of an at-will employment relationship] is rebutted is normally a question of fact, unless an employee handbook specifically negates any intention on the part of the employer to have it become a part of the employment contract." Jenkins, 108 P.3d at 388.

Plaintiffs' contract claim relies on the UPS Compliance Standards and Procedures Manual ("Manual") which, they argue, promises that no employee will suffer retaliation for good faith reports of violations of any legal or ethical responsibilities. (Dkt. No. 43, Ex. Q). Plaintiffs further argue the Manual requires all employees to comply with UPS's Code of Business Conduct which contains a similar promise of non-retaliation. Because the Manual does not contain an express disclaimer that the statements made therein do not make up any employment contract terms, Plaintiffs argue its "specific promises" regarding non-retaliation, obligation to comply with the Code of Business Conduct, and duty to report any violations are contract terms rebutting the at-will employment presumption. (Dkt. No. 54, p. 26).

The Manual describes the "standards and procedures UPS managers are to use in their management of our legal and ethical responsibilities." (Dkt. No. 43, Ex. Q, UPS-HB05447). Throughout the Manual are statements that no employee will be retaliated against for a good faith report of a violation of any UPS legal or ethical responsibilities or for asking a question about these responsibilities. (Dkt. No. 43, Exs. Q, R). The Manual further states that all employees are expected to comply with the UPS Code of Business Conduct which also promises that "[n]o employee will be disciplined, lose a job, or be retaliated against in any way for asking questions or voicing concerns about our legal or ethical obligations, when acting in good faith."[6] (Dkt. No. 43, Ex. Q, UPS-HB05447, UPS-HB05451); (Dkt. No. 41, Ex. 1, p. 4). The UPS Code of Business Conduct

---

[6] The UPS Code of Business Conduct sets forth standards of conduct for all of UPS and provide information about UPS's standards of integrity and that all employees and representatives are required to adhere to it. (Dkt. No. 41, Ex. 1). The Code of Business Conduct, on the inside front cover, states:

> We Comply With the UPS Code of Business Conduct. We manage our business in compliance with all applicable laws and regulations of the countries in which we operate, and in accordance with our company's high standards of business conduct. All employees are expected to comply with the UPS Code of Business Conduct, which is essential to maintaining our reputation for honesty, quality, and integrity. It also is each employee's responsibility to report to the company any situation where our standards or the laws are being violated. Any employee disclosing, in good faith, violations or suspected violations of legal requirements or UPS business standards will not be subjected to retaliation or retribution.

(Dkt. No. 41, Ex. 1).

MEMORANDUM ORDER - Page 13
09ORDERS\HARDENBROOK

goes on to state that UPS desires "to foster an environment that allows our people to report violations without the fear of retaliation or retribution." (Dkt. No. 41, Ex. 1, p. 6). Similar statements are also made in the Manual. (Dkt. No. 43, Exs. Q, R). While the UPS Code of Business Ethics and the Policy Book both contain express disclaimers that they do not modify any terms of employment, the Manual does not contain such an expression or disclaimer.

Plaintiffs argue questions of fact exist as to whether these statements are express or implied limitations on the parties' at-will employment relationship in light of the fact that there is no disclaimer in the Manual. Because UPS specifically promised its employees they will suffer no retaliation for asking questions about regulations and/or reporting violations of regulations, Plaintiffs argue that UPS has limited the terms of the employment relationship such that it was no longer at-will. (Dkt. No. 54, p. 26-29). UPS counters that vague assurances of long term employment, general policy statements, and the existence of anti-retaliation policies do not create enforceable contract rights. The Court agrees.

"[A]n employment contract is presumed to be at-will unless 'the parties ... agree to a contract term limiting the right of either to terminate the contract at will. A limitation will be implied when, from all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either party's right to terminate the relationship was limited by the implied in fact agreement." Jenkins, 108 P.2d at 387-88. The statements and assurances of non-retaliation for raising questions or reporting legal or ethical violations are too vague to constitute an enforceable contract or a modification of the at-will employment relationship. See Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1465 (10th Cir. 1994) (applying Colorado law) ("Assurances of fair treatment or 'mere vague assurances' are unenforceable."). Similarly, general policy statements are not enforceable promises. See Jenkins, 108 P.3d at 389 (citation omitted) ("[A]n employer may provide guidelines, which are necessary conditions for continued employment, and avoid having them read as a guarantee for a specific term of employment or placing limits on the reasons for discharge.").

In its reply, UPS also argues that the Manual "is not widely distributed to UPS employees, and was not intended for use by supervisory or managerial employees, such as the Plaintiffs...[t]he Manual is used by employees in the corporate compliance department as a departmental reference and procedures manual." (Dkt. No. 70, p. 9). This position is somewhat contrary to the Manual

itself which is replete with references to its application to all employees and managers and that it should be made available "as needed to ensure adherence to the procedures and standards set forth." (Dkt. No. 43, Ex. Q, UPS-HB05448, UPS-HB05464, UPS-HB05465). On whole, however, the Manual does seem to pertain more to management levels higher than those of the Plaintiffs. Further, the Manual is a supplement to the documents controlling in this case; the UPS Code of Business Conduct and the Policy Book both of which contain disclaimers.[7] As such, UPS argues the existence of disclaimers in both the UPS Code of Business Conduct and the Policy Book means the at-will employment presumption is not rebutted. Again, the Court agrees.

The Manual itself states that it is supplemental to the UPS Code of Business Conduct. The inside back cover of the UPS Code of Business Conduct states:

> The Code is not an express or implied contract of employment and does not create any contractual rights of any kind between UPS and its employees. In addition, all employees should understand that the Code does not modify their employment relationship, whether at will or governed by the contract. This Code is intended to clarify each employee's existing obligation for proper conduct. UPS reserves the right to amend, alter, or terminate the Code or the policies at any time for any reason.

(Dkt. No. 41, Ex. 1). Based on this language, the Court finds that the UPS Code of Business Conduct clearly and expressly disclaims that it modifies the parties' at-will employment relationship and/or that it creates any contract terms. Thus, Plaintiffs have failed to negate the presumption of an at-will employment relationship between the parties based on this manual. A similar disclaimer also appears in the Policy Book which is referenced in the deposition testimony of Plaintiff Hardenbrook.[8]

---

[7] This is evidenced by the deposition testimony of many of the witnesses for both sides who refer to the UPS Code of Business Conduct and the Policy Book but not the Manual.

[8] The UPS Policy Book contains similar requirements that its employees comply with all laws and regulations, report violations of any laws, and assures that employees will not be retaliated against for reporting, in good faith, and violations. It states:

> We manage our business in compliance with all the applicable laws and regulations of the countries in which we operate...[a]ll employees are expected to comply with the Code of Business Conduct.... Also, it is each employee's responsibility to report to the company any situation where our standards or the laws are being violated. Any employee disclosing, in good faith, violations or suspected violations of legal or UPS business standards will not be subjected to retaliation or retribution. Likewise, failure to comply with the provisions of the UPS Code of Business Conduct will not be tolerated.

(Dkt. No. 41, Ex. 2, p. 8). UPS Policy Book goes on to state "[t]he Policy Book is not a contract of employment and does not affect your rights as an employee of UPS." (Dkt. No. 21, Ex. 2, p. iii). This express disclaimer overcomes any rebuttal of the at-will employment presumption. In addition, the UPS Policy Book notes that it "is not a 'how-to-do-it' manual or employment contract. It is intended, instead, to provide clearly defined policies to guide managers and supervisors at

It is inconsistent with those expressed provisions in the UPS Code of Business Conduct and the Policy Book to imply differently. "[P]romises should not be found by process of implication if they would be inconsistent with express provisions that there is no reason to set aside or to hold inoperative.... An implication that would otherwise be reasonable should not be made when the contrary is indicated in clear and express words." Jones v. Micron Tech., Inc., 923 P.2d 486, 490 (Idaho 1996) (quoting 3 Arthur Linton Corbin, CORBIN ON CONTRACTS § 564, at 297-98 (1960)). Because there are expressed disclaimers in the controlling documents, the Court finds the presumption of an at-will relationship has not been rebutted. As such, the Plaintiffs' contract claims fail as a matter of law.

III.     Covenant of Good Faith and Fair Dealing

Under Idaho law, there are other recognized exceptions to at-will employment including the implied covenant of good faith and fair dealing that exists in all employment relationships. See Jenkins, 108 P.3d at 389-90; Metcalf, 778P.2d 744. This covenant does not inject a "bad faith" tort action into Idaho employment law, but allows an employee to claim breach of the covenant if the employer takes some action that nullifies, qualifies, or impairs the benefits or rights of the contractual/employment relationship between the parties.

The "covenant of good faith and fair dealing is implied in all employment agreements--including at-will employment relationships." Van v. Portneuf Medical Center, 212 P.3d 982 (Idaho 2009) (citing Jenkins, 108 P.3d at 389-90). "The covenant requires the parties to perform, in good faith, the obligations contained in their agreement, and a violation occurs when either party violates, qualifies, or significantly impairs any benefit or right of the other party under the contract--whether express or implied. However, the covenant does not create a duty for the employer to terminate the at-will employee only for good cause. The covenant only arises in connection with the terms agreed to by the parties, and does not create new duties that are not inherent in the employment agreement." Id. (citing Jenkins, 108 P.3d at 389-90; Jones v. Micron Tech., Inc., 923 P.2d 486, 492 (Idaho Ct. App.1996).

---

all levels of responsibility at United Parcel Service in making decisions." (Dkt. No. 41, Ex. 2, p. 12). This statement further evidences that the terms of this document were not intended to change the at-will nature of UPS's employees. See Jenkins, 108 P.3d at 389 ("[A]n employer may provide guidelines, which are necessary conditions for continued employment, and avoid having them read as a guarantee for a specific term of employment or placing limits on the reasons for discharge.") (citation omitted).

MEMORANDUM ORDER - Page 16
09ORDERS\HARDENBROOK

The only wrongful employment actions alleged against Plaintiff Hardenbrook and Plaintiff Gooch were their terminations. Because both Plaintiff Hardenbrook and Plaintiff Gooch were both at-will employees and they have failed to demonstrate that there was any agreement that their termination required cause, they have failed to alleged facts sufficient to create an issue of material fact on this claim. As such, UPS' motion for summary judgment is well taken on this claim and will be granted.

As to Plaintiff Orloff, his demotion is the employment action that allegedly violated the covenant. "An implied covenant of good faith and fair dealing should not be applied to impose any duty which is contrary to the agreement as executed by the parties." Thompson v. City of Idaho Falls, 887 P.2d 1094, 1100 (Idaho App. 1994) (citation omitted). Plaintiff Orloff is also an at-will employee of UPS. Plaintiff Orloff has not pointed to anything in the record indicating and agreement between himself and UPS that changed the nature of his at-will employment. Nor has Plaintiff Orloff identified any term of any contract that was violated by UPS. Accordingly, the motion will be granted on this claim as to Plaintiff Orloff as well.

## ORDER

Being fully advised in the premises, the Court finds that there are no genuine issues of material fact and that Defendant is entitled to a judgment as a mater of law. The Court **HEREBY ORDERS** Defendant's Motion for Summary Judgment (Dkt. No. 40) is **GRANTED IN PART AND DENIED IN PART**.

DATED: **December 8, 2009**

Honorable Edward J. Lodge
U. S. District Judge