B. Newal Squyres (ISB #1621)
Scott D. Hess (ISB #2897)
A. Dean Bennett (ISB #7735)
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, Idaho  83701-2527
Telephone:   (208) 342-5000
Facsimile:    (208) 343-8869
Email:  nsquyres@hollandhart.com
         sdhess@hollandhart.com
         adbennett@hollandhart.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAREL HARDENBROOK, an individual, PAUL GOOCH, an individual and ROBERT ORLOFF, an individual,<br><br>          Plaintiffs,<br><br>vs.<br><br>UNITED PARCEL SERVICE, CO., a Delaware corporation,<br><br>          Defendant. | Case No.  07-509-S-EJL<br><br>**MEMORANDUM IN SUPPORT OF UPS'S MOTION FOR ATTORNEY FEES PURSUANT TO LOCAL CIVIL RULE 54.2.** |

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  PLAINTIFFS' EXCESSIVE DISCOVERY REQUESTS AND FAILED
     ATTEMPT TO ADD CLAIMS FOR PUNITIVE DAMAGES ...............................................3

III. ANALYSIS.........................................................................................................5

     A.  Legal Standard For an Award of Attorney Fees................................................5

     B.  As the Prevailing Party, UPS is Entitled to Recover Its Costs and Attorney Fees
         Under I.C. § 12-120(3). ...................................................................................7

         1.  UPS was the Prevailing Party Against Robert Orloff. ...............................7

         2.  UPS was the Prevailing Party Against Darel Hardenbrook. ....................8

     C.  UPS's Attorney Fees are Reasonable Given the Specific Circumstances of This
         Case. .............................................................................................................9

         1.  Plaintiffs' 383 Discovery Requests Forced UPS to Review Approximately
             1,000,000 Documents of Electronically Stored Information ("ESI"). ....................10

         2.  Plaintiffs' Fishing Expedition in an Attempt to Add a Claim for Punitive
             Damages Substantially Increased the Cost of Defense. ...........................................10

         3.  Holland & Hart Performed Work for Which It Did Not Charge UPS. ....................11

         4.  Holland & Hart Charged Fees to UPS of Which It Does Not Seek Here. ..............11

         5.  UPS's Reasonable Attorney Fees Relevant to This Motion. ...................................11

         6.  UPS's Reasonable Paralegal Fees—Mostly Due to ESI—Relevant to This
             Motion. .......................................................................................................13

     D.  UPS is Entitled to Attorney Fees Against Orloff and Hardenbrook. ............................14

         1.  UPS is Entitled to $46,722.50 in Attorney Fees Specifically Attributable to
             the Defense of Robert Orloff's Claims. ..................................................................14

         2.  UPS is Entitled to $40,277.50 in Attorney Fees Specifically Attributable to
             the Defense of Darel Hardenbrook's Claims. ........................................................15

         3.  UPS is Entitled to a Pro Rata Share of Fees Attributable to the Collective
             Defense of Plaintiffs' Claims. ..............................................................................15

IV.  CONCLUSION....................................................................................................17

Defendant United Parcel Service Co. ("UPS") files this memorandum in support of its Motion for Attorney Fees.  UPS also contemporaneously files the Declaration of B. Newal Squyres in Support of its Motion for Attorney Fees ("Squyres Decl.").

## I.      INTRODUCTION

On November 2, 2007, Robert Orloff, Darel Hardenbrook, and Paul Gooch, filed a lawsuit against UPS alleging claims for: (1) retaliation in violation of Idaho public policy; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. Despite the substantial dissimilarities in the factual bases underlying their claims, Orloff, Hardenbrook and Gooch strategically combined their claims under a single caption cobbling together a common theme based on an email drafted by Gooch in December of 2005.  In addition to the nine claims pleaded within the Complaint, Plaintiffs made clear their intention to amend the Complaint to add claims for punitive damages.

At the time Plaintiffs filed their Complaint, UPS faced nine causes of action brought by three different Plaintiffs, alleging a minimum of $1 million in damages per Plaintiff, or a minimum of $3 million in damages.  As the case moved forward, and after Plaintiffs engaged in a punitive damage claim fishing expedition, substantially and unnecessarily expanding the scope of discovery, Plaintiffs motioned the Court to add a claim for punitive damages.  If Plaintiffs prevailed on their motion, UPS would have faced possible damages of nearly $14 million.

Faced with these prospects, at significant expense, UPS vigorously defended against Plaintiffs' pleaded claims and against Plaintiffs' attempt to add a claim for punitive damages. UPS was successful in both regards.  After a year of answering and supplementing Plaintiffs' 383 requests for production, and in defending depositions taken primarily for the purpose of attempting to establish a basis to add a claim for punitive damages, Plaintiffs filed, and the Court

denied, Plaintiffs' motion to amend to add claims for punitive damages.  And, shortly thereafter, the Court issued an order granting UPS summary judgment on seven of Plaintiffs' nine claims. The Court completely dismissed Orloff from this lawsuit and the Court also dismissed two of the three claims of both Gooch and Hardenbrook.[1]

The amount of attorney fees UPS seeks through this motion is only a small fraction of the amount of money Plaintiffs sought in this lawsuit.  UPS, as the prevailing party against Orloff, is entitled to its attorney fees in defending against his three pleaded claims and against his motion to amend to add a claim for punitive damages.  And, while UPS obviously recognizes the jury's award in favor of Hardenbrook as to his one claim that survived summary judgment, given UPS's successes in defending against two of Hardenbrook's pleaded claims and his motion to amend to add a claim for punitive damages, and for the reasons articulated in UPS's post-trial motions under Rules 50 and 59, UPS respectfully submits that it is the prevailing party against Hardenbrook.

In the alternative, UPS respectfully requests this Court wait to decide who is the prevailing party between it and Hardenbrook until after ruling on UPS's post-trial motions under Federal Rules 50 and 59.  Pursuant to established Ninth Circuit precedent, the period for filing a timely motion for attorney fees is tolled while post-trial motions are pending.  *Bailey v. County of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005) (noting that timely filed post-trial motions under Rule 50 or 59 "operate to suspend the finality of the district court's judgment").

---

[1] The parties voluntarily dismissed Paul Gooch from the case with the mutual agreement that he and UPS would be responsible for their own fees and costs attributable to Mr. Gooch's claims. *See* Dkt. # 97.

MEMORANDUM IN SUPPORT OF UPS'S MOTION FOR ATTORNEY FEES
PURSUANT TO LOCAL CIVIL RULE 54.2 - 2

Therefore, if the Court decides that at this time it cannot conclude that UPS is the prevailing party as to Hardenbrook, UPS requests the Court allow the parties to revisit this issue after the Court rules on UPS's post-trial motions.

## II.   PLAINTIFFS' EXCESSIVE DISCOVERY REQUESTS AND FAILED ATTEMPT TO ADD CLAIMS FOR PUNITIVE DAMAGES

From the beginning of this lawsuit, Plaintiffs stated their intention to file a motion seeking leave to amend their Complaint to add claims for punitive damages. *See* Dkt. # 1, Ex. A at ¶¶ 36, 53. *See also* Squyres Decl. at ¶ 2.  In pursuit of facts to support a punitive damage claim, Plaintiffs served UPS with 383 separate requests for production. *See* Declaration of Stephanie Omsberg in Opposition to Plaintiffs' Motion to Compel Discovery and for Sanctions (Dkt. # 31-3) ("Omsberg Decl.") at ¶ 4.  The requests were extremely broad in nature seeking information from labor grievance documents to the past ten years of hours of service violations. Squyres Decl. at ¶ 7.  In addition, the requests sought electronically stored information ("ESI") across the same broad range of topics. *Id.*

As a direct consequence of the extensive nature of Plaintiffs' requests for production, UPS was forced to undertake the arduous and enormously expensive task of compiling, reviewing, and producing documents, most of which proved simply not to be relevant to this lawsuit. *See* Squyres Decl. at ¶ 8.  Had discovery been limited in scope to the claims pleaded in Plaintiffs' Complaint, much of the expense associated with this lawsuit would not have been incurred by either party. *Id.* at ¶ 9.

In the beginning of May of 2008, UPS began the process of gathering ESI from 27 separate custodians. *See* Omsberg Decl. at ¶ 6.  By the end of May of 2008, the ESI files began arriving at Holland & Hart's offices for processing.  These files consisted of 209,059 records (approximately 1,000,000 pages of documents). *Id.* at ¶ 7.  The initial process of filtering the

documents began immediately, and as a result, the approximately 1,000,000 pages of documents were filtered down to 579,789 pages. *Id.* at ¶ 8. By the end of June or early July 2008, the database (called Ringtail) used by Holland & Hart's litigation support personnel was sufficiently populated with ESI to take the next step in the process—reviewing for privilege and responsiveness to Plaintiffs' 383 requests for production. By the end of July 2008, a team of paralegals and attorneys were involved in the ESI review and production process. *Id.* at ¶ 9.

Through an agreement of counsel for a rolling production of documents, between July 1, 2008, and October 23, 2008, Holland & Hart rolled out seven separate productions of ESI documents. *Id.* at ¶¶ 10-17. UPS ultimately produced over 55,600 pages of documents in responding to Plaintiffs' requests. *Id.* at ¶ 20.

Apparently dissatisfied with the information it received, Plaintiffs filed a motion to compel seeking additional information. *See* Dkt. # 24. UPS was again forced to expend substantial resources in responding to Plaintiffs' motion aimed primarily at the prospects of amending their Complaint to add a claim for punitive damages, not at the claims pleaded in Plaintiffs' Complaint. Squyres Decl. at ¶¶ 10-11; *see also* Dkt. # 31, 31-2, 31-3, 31-4, 31-5. After UPS fully briefed and filed its response, Plaintiffs withdrew their motion to compel. *See* Dkt. # 49.

In addition to the substantial written discovery expense required by Plaintiffs' punitive damage claim quest, Plaintiffs also scheduled, and ultimately took, depositions of UPS employees who had no knowledge of Plaintiffs' terminations, and were completely unconnected to the decisions to terminate Plaintiffs' employment. Squyres Decl. at ¶ 13. Plaintiff ultimately took 17 depositions in this case, compared to UPS, which took four depositions. *Id.*

After well over a year and a half of attempting to procure facts to support a claim for punitive damages, Plaintiffs filed Plaintiffs' Motion For Leave to File First Amended Complaint

to Allege a Claim for Punitive Damages.  *See* Dkt. # 37.  Despite the substantial expense UPS

incurred in responding to the 383 requests for production and the time and expense incurred in

preparing for, traveling to, and defending numerous depositions, Plaintiffs were unable to

convince he Court that they should be allowed to amend to add a claim for punitive damages.

The Court denied Plaintiffs' motion on October 26, 2009.  *See* Dkt. # 79.

Dissatisfied with the Court's decision, Plaintiffs filed yet another document with the

Court—Plaintiffs' Objection to Magistrate's Decision and Order Denying Plaintiffs' Motion for

Leave to Amend Complaint.  *See* Dkt. # 80.  Again, UPS was tasked with responding to

Plaintiffs' endless endeavor to add a claim for punitive damages.  Notwithstanding Plaintiffs'

additional effort which necessitated UPS to incur additional attorney fees, Plaintiffs' objection

went nowhere.  *See* Squyres Decl. at ¶ 16.

Less than one month after Plaintiffs challenged the Court's order denying their motion to

amend to add a claim for punitive damages, on December 8, 2009, the Court granted UPS's

Motion for Summary Judgment on seven of Plaintiffs' nine claims, finding against each Plaintiff

on their breach of contract and breach of the implied covenant of good faith and fair dealing

claims, and against Orloff on his "wrongful demotion" claim.  *See* Dkt. # 84.

### III.    ANALYSIS

#### A.    LEGAL STANDARD FOR AN AWARD OF ATTORNEY FEES.

Idaho law governs the award of attorney fees in this matter because federal courts follow

state law as to the determination of an award of attorney fees in diversity actions.  *Fibertection,*

*A Fox Co. v. Jensen*, No. CV-07-245-E.BLW, 2009 WL 1513176 at *1 (D. Idaho May 28, 2009)

(*citing Interform Co. v. Mitchell*, 575 F.2d 1270 (9th Cir. 1978) (applying Idaho law)).

Idaho Code § 12-120(3) provides in relevant part that:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or **contract relating to** the purchase or sale of goods, wares, merchandise, or services and **in any commercial transaction** unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.
>
> The term "commercial transaction" is defined to mean **all** transactions except transactions for personal or household purposes.  The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

(Emphasis added.)

This lawsuit unquestionably falls within the purview of Idaho Code § 12-120(3).  "[T]he prevailing party in an action brought for breach of an employment contract is entitled to an award of fees under § 12-120(3)."  *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 391 (Idaho 2005).  And, because claims related to an employment relationship are "inherently contractual in nature," a prevailing party as to retaliation claims is likewise entitled to an award of fees under § 12-120(3).  *See Thomas v. Medical Center Physicians, P.A.*, 61 P.3d 557, 568 (Idaho 2002).

Moreover, each of Plaintiffs' claims arose in the context of a commercial transaction placing them squarely within the reach of § 12-120(3).  *Lettunich v. Key Bank Nat'l Ass'n*, 109 P.3d 1104, 1110-11 (Idaho 2005) ("the critical test is whether the commercial transaction comprises the gravamen of the lawsuit; the commercial transaction must be integral to the claim[s] and constitute a basis on which the party is attempting to recover").  Finally, Plaintiffs conceded to the applicability of § 12-120(3) as they took the position in their Complaint that Idaho Code § 12-120 controlled an award of attorney's fees in this case.  *See* Dkt. # 1, Ex. A at ¶¶ 35, 45, 52.

Where Idaho Code § 12-120(3) applies, "the prevailing party below will be entitled to attorney fees without a special showing."  *Bott v. Idaho State Building Authority*, 835 P.2d 1282,

1290 (Idaho 1992).  "The Idaho Supreme Court has made it clear that Idaho Code § 12-120 is

mandatory in nature."  *Clement v. Franklin Investment Group, Ltd.*, 689 F. Supp. 1575, 1577

(D. Idaho 1988).  Because each claim alleged by Orloff and Hardenbrook falls under the purview

of § 12-120(3), UPS is entitled to an award of its attorney fees upon a showing that it is the

prevailing party in this lawsuit.

**B.**  **AS THE PREVAILING PARTY, UPS IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEY FEES UNDER I.C. § 12-120(3).**

"The determination of whether a litigant is the prevailing party is committed to the

discretion of the trial court."  *Wheaton Equip. Co. v. Franmar, Inc.*, 2007 WL 576450, at *1

(D. Idaho 2007) (citing *Sanders v. Lankford,* 1 P.3d 823, 826 (Idaho Ct. App. 2000); *see also*

Idaho R. Civ. P. 54(d)(1)(B).  Idaho courts have established "three principal factors that trial

court must consider when determining which party, if any, prevailed: (1) the final judgment or

result obtained in relation to the relief sought; (2) whether there were multiple claims or issues;

and (3) the extent to which either party prevailed on each issue or claim."  *Id.*

When applied, the factors lead to the conclusion that a defendant who defeats the larger

portion of a plaintiff's claim is the prevailing party.  *See Chadderdon v. King*, 659 P.2d 160, 165

(Idaho 1983).  In that case, when the plaintiff sought nearly $60,000 and the defendant

counterclaimed for almost $10,000, the court determined that the defendant was the prevailing

party although the jury denied both parties affirmative relief.  *Id.*  The final inquiry required the

court to consider the entire litigation and determine who prevailed on the larger portion of the

case.

### 1.  UPS was the Prevailing Party Against Robert Orloff.

The Court entered Final Judgment against Robert Orloff in favor of UPS, dismissing in

their entirety each of his three claims, and awarding him nothing.  *See* Dkt. #147.  "In litigation,

avoiding liability is as good for a defendant as winning a money judgment is for a plaintiff."
*Wheaton Equip. Co.*, 2007 WL 576450 at *2 (*citing Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 117 P.3d 133 (Idaho 2005)).  Therefore, UPS is unquestionably the prevailing party against Orloff, and therefore is entitled to all of its reasonable attorney fees incurred in defending against his claims.

**2.      UPS was the Prevailing Party Against Darel Hardenbrook.**

Although UPS did not have nearly as a decisive victory over Hardenbrook as it did Orloff, under Idaho law, UPS is still the prevailing party against Hardenbrook when the case is viewed from the start.  *See Eighteen Mile Ranch*, 117 P.3d at 133 ("[T]he prevailing party question is examined and determined from an overall view").  Given UPS's successes in defending against two of Hardenbrook's pleaded claims and his motion to amend to add a claim for punitive damages, and for the reasons articulated in UPS's post-trial motions under Rules 50 and 59, UPS respectfully submits that an overall view of the case leads to the conclusion that UPS is the prevailing party against Hardenbrook.

To the extent the Court cannot conclude that UPS is the prevailing party against Darel Hardenbrook at this time, UPS requests the Court wait to decide who is the prevailing party until after ruling on UPS's post-trial motions.  UPS obviously recognizes the significant jury verdict entered against it as a result of the jury trial on Hardenbrook's single claim which survived summary judgment.  UPS also recognizes the judgment entered as to that claim.  *See* Dkt. # 147.  That judgment, however, is not a final judgment, and motions for attorney fees as the result of trial are not proper until the pending post-trial motions have been resolved.  *See Bailey v. County of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005) (noting that timely filed post-trial motions under Rule 50 or 59 "operate to suspend the finality of the district court's judgment").

As a result, to the extent the Court cannot determine that UPS is the prevailing party given its overall successes against Hardenbrook throughout this litigation, UPS requests the Court wait to decide who is the prevailing party until after ruling on UPS's post-trial motions and the parties are given a chance to fully brief the issue to the Court.

### C.   UPS'S ATTORNEY FEES ARE REASONABLE GIVEN THE SPECIFIC CIRCUMSTANCES OF THIS CASE.

The amount of the attorney fees incurred by UPS is but a fraction of the amount of money Plaintiffs sought throughout this lawsuit.  As referenced above, as of November 2, 2007, Plaintiffs indicated that they were seeking at least $3 million in damages.  *See* Dkt. # 1, Ex. A. Then, in June 2008, through an expert report, Plaintiffs took the position that they had suffered damages in an amount no less than $3.19 million and as high as $4.65 million.  *See* Squyres Decl. at ¶ 4, Ex. A.  Finally, through Plaintiffs' motion to amend to add a claim for punitive damages, UPS and its attorneys understood Plaintiffs would be seeking damages in excess of $10 million.  *Id.* at ¶ 5.  (Under Idaho Code § 6-1604(3), Plaintiffs theoretically could have sought as much as $13.95 million in punitive damages.)  UPS now seeks attorney fees of less than 5% of Plaintiffs' potential claim.

UPS staffed the case efficiently.  For example, Holland & Hart had only a single attorney at most depositions.  Holland & Hart had paralegals and support staff engage in most of the document handling including the utilization of an extensive computerized document database to compile and keep organized approximately 1,000,000 pages of documents.  Notwithstanding Plaintiffs' punitive damage claim expedition, and their filing of a needless motion to compel, a motion to strike portions of an affidavit, a motion to amend, and an objection to Judge Dale's decision regarding their motion to amend—none of which Plaintiffs prevailed upon, Holland &

Hart was able to keep its attorney fees reasonable for this over two-year, difficult, contentious, and complex litigation. *Id.* at ¶ 27.

Evidence of the reasonableness of UPS's attorney fees request include: (1) the expense of Plaintiffs' requested ESI; (2) the expense of Plaintiffs' punitive damage claim attempt effort; (3) the fact that Holland & Hart performed work for which it did not charge UPS; (4) the fact that UPS does not seek some attorney fees which Holland & Hart did charge and which UPS did pay; (5) the number of attorneys and their hourly rates billed for the tasks they performed are reasonable; and (6) the number of paralegals and the hourly rates billed for the tasks they performed are reasonable.

> **1.    Plaintiffs' 383 Discovery Requests Forced UPS to Review Approximately 1,000,000 Documents of Electronically Stored Information ("ESI").**

A large expenditure of time and cost was in response to Plaintiffs' discovery requests. Holland & Hart parsed through over 1,000,000 pages of potentially responsive pages of ESI. The details of this labor-intensive process are detailed in the Declaration of Stephanie Omsberg in Opposition to Plaintiffs' Motion to Compel Discovery and for Sanctions. *See* Dkt. #31-3. UPS attorney and paralegals expended over 1,400 hours and $235,000 in the process of reviewing documents potentially responsive to Plaintiffs' 383 requests for production. *See* Squyres Decl. at ¶ 12.

> **2.    Plaintiffs' Fishing Expedition in an Attempt to Add a Claim for Punitive Damages Substantially Increased the Cost of Defense.**

Plaintiffs moved for punitive damages, even challenging Magistrate Dale's denial of their motion to amend. *See* Dkt. # 37, 79, 80. UPS and its attorneys accordingly understood Plaintiffs to be taking the position that they would be seeking damages in excess of $10 million if Plaintiffs succeeded at trial. Under Idaho Code § 6-1604(3), Plaintiffs theoretically could have

recovered as much as $13.95 million in punitive damages.  Exclusive of the time and money spent on the ESI production, UPS ultimately expended nearly $100,000 defending against Plaintiffs' failed attempt to add a claim for punitive damages.  *See* Squyres Decl. at ¶ 18.

      **3.**      **Holland & Hart Performed Work for Which It Did Not Charge UPS.**

Holland & Hart's attorneys spent time on this litigation for which the firm chose not to bill the client.  Of course, UPS does not seek reimbursement here of the fees it was not charged.  Additionally, due to the volume of work Holland & Hart performs for UPS, the firm has a fee agreement established where Holland & Hart bills UPS its standard hourly rate at an 11% discount.  *See* Squyres Decl. at ¶ 24.  Therefore, Holland & Hart billed UPS for hours expended by its timekeepers (attorneys and paralegals) multiplied by the respective timekeepers' standard hourly rates, less the 11% discount.  *Id.*  UPS seeks reimbursement here for the adjusted amount which it actually paid to Holland & Hart.

      **4.**      **Holland & Hart Charged Fees to UPS of Which It Does Not Seek Here.**

There were certain fees which were charged by Holland & Hart to UPS, and which UPS did pay, that are not included within this motion.  For instance, Holland & Hart has also removed time entries billed to UPS for timekeepers who logged fewer than 40 hours to this matter.  Hours billed by other timekeepers and those of a summer associate have also been removed.  Thus, Holland & Hart billed UPS for over 200 hours that are not reflected in its motion.  *See* Squyres Decl. at ¶ 28.

      **5.**      **UPS's Reasonable Attorney Fees Relevant to This Motion.**

Five Holland & Hart attorneys billed more than 40 hours to this litigation between November 2, 2009, and December 8, 2009.  Their time constitutes the overwhelming majority of

the fees relevant to this motion.  These timekeepers, their seniority, their hourly rates, the

number of hours billed, and the fees relevant to this motion are as follows:[2]

| Attorney Timekeeper | Admitted to Practice | Hourly Rate Range | Hours | Fees |
|---|---|---|---|---|
| Newal Squyres | 1974 | $325-$375 | 730.70 | $272,641.00 |
| Jude Biggs | 1988 | $375 | 178.70 | $61,345.00 |
| Pam Howland | 2001 | $235-$290 | 165.69 | $45,252.00 |
| Dean Bennett | 2007 | $195-$210 | 189.60 | $36,980.00 |
| David Hyams | 2008 | $175-$190 | 266.80 | $46,688.00 |

Newal Squyres was the principal attorney on the litigation.  He was the primary contact

with the client, the primary contact with opposing counsel, directed the overall representation,

prepared for and conducted nearly all of the depositions, oversaw the substantial briefing effort

involved with the case, drafted and revised much of the briefing involved with all aspects of this

case, and attended all hearings on behalf of UPS.

Jude Biggs is the Labor and Employment attorney at Holland & Hart with overall

responsibility for the relationship with UPS, and has worked on numerous cases over the years.

She conducted much of the summary judgment briefing and research, she conducted the majority

of the briefing and research involved in responding to Plaintiffs' attempt to add a claim for

punitive damages, and she also provided strategic guidance on the overall litigation and case

management.

Pam Howland was the primary attorney involved in responding to Plaintiffs' 383 requests

for production.  She oversaw paralegal and staff assignments and managed the electronically

stored information aspects of the case which included the culling and review of approximately

1,000,000 pages of documents.  Ms. Howland was actively involved in this case up until the

---

[2] Additional information as to this chart is contained in Exhibit B, C, and E to the Squyres
Declaration.

beginning of 2009, nearly all of the way through the written discovery process.  She was on the firm's Oust team and was thus not able to devote much time to this case in 2009.

Dean Bennett conducted legal research and briefing throughout this lawsuit.  He also worked with expert witnesses and was involved with discovery in this case.

David Hyams conducted much of the legal research and briefing involved with Plaintiffs' motion to amend to add a claim for punitive damages.  Mr. Hyams also contributed to the research and briefing on many other aspects of this case.

### 6.    UPS's Reasonable Paralegal Fees—Mostly Due to ESI—Relevant to This Motion.

Six Holland & Hart paralegals, and one data analyst billed more than 40 hours to this litigation between November 2, 2009, and December 8, 2009.  Their time represents the expense associated with responding to Plaintiffs' 383 requests for production and the review of approximately 1,000,000 pages of ESI documents.  These timekeepers, their hourly rates, the number of hours billed, and the fees relevant to this motion are as follows:[3]

| Paralegal Timekeeper | Hourly Rate Range | Hours | Fees |
|---|---|---|---|
| Stephanie Omsberg | $135-$155 | 565.00 | $80,645.00 |
| Karen Kinnear | $145-$185 | 257.80 | $42,979.00 |
| Thelma Hall | $165 | 123.20 | $21,178.00 |
| Marcy Weaver | $165 | 97.20 | $16,526.00 |
| Carol Leffler | $165 | 64.90 | $10,705.00 |
| Vivian Barrios | $215-$245 | 57.80 | $15,533.00 |
| Aleta Johnson | $145 | 94.20 | $14,148.00 |

Stephanie Omsberg was the principal paralegal on the litigation.  Ms. Omsberg oversaw the creation of the document database, managed a staff of additional paralegals to review the ESI responsive to Plaintiffs' 383 requests for production, and assisted in compiling exhibits for depositions.

---

[3] Additional information as to this chart is contained in Exhibits B, C, and E to the Squyres Declaration.

Karen Kinnear, Thelma Hall, Marcy Weaver, Carol Leffler, and Vivian Barrios, are paralegals who assisted Ms. Howland and Ms. Omsberg with the organization and review of the ESI.  The additional five paralegals were necessary to timely review the documents Plaintiffs requested.

Aleta Johnson is a litigation support analyst who set up the electronic database and prepared and processed documents for incorporation into the electronic database.  She also assisted in ensuring that the documents produced to Plaintiffs in the course of discovery were produced in a useable format to comply with UPS's disclosure and discovery obligations.

### D.      UPS IS ENTITLED TO ATTORNEY FEES AGAINST ORLOFF AND HARDENBROOK.

Throughout this lawsuit, from Complaint through summary judgment, Plaintiffs attempted to weave together the facts underlying each of the three Plaintiffs' claims.  While some of the attorney fees incurred by UPS can be specifically attributed to a single Plaintiff, given the way Plaintiffs pursued their claims and managed this case, the majority of the fees incurred by UPS were in the collective defense against all the Plaintiffs' claims and were equally attributable to all three Plaintiffs.

Therefore, for purposes of this motion, UPS has identified the attorney fees specifically attributable to Orloff and Hardenbrook, and has also calculated a pro rata share of the fees that were equally applicable to all three Plaintiffs for both Orloff and Hardenbrook.

### 1.      UPS is Entitled to $46,722.50 in Attorney Fees Specifically Attributable to the Defense of Robert Orloff's Claims.

A number of time entries billed to UPS can be isolated to defending against Orloff's claims alone.  For example, any reference to "wrongful demotion" is specifically attributable to Orloff because he is the only Plaintiff that alleged this "unique" claim.  The total number of hours billed which can be specifically attributed to Orloff is 217.8 hours, for a total attorney fees

amount of $46,722.50.  *See* Squyres Decl., Ex. B (Spreadsheet of time entries specific to Robert Orloff).

### 2.    UPS is Entitled to $40,277.50 in Attorney Fees Specifically Attributable to the Defense of Darel Hardenbrook's Claims.[4]

Some of the time entries billed to UPS can be isolated to defending against Hardenbrook's claims alone.  For example, the time spent preparing for and taking the deposition of Hardenbrook and for addressing his claims regarding the BEQ are unique to Hardenbrook. The total number of hours billed to UPS, specifically attributable to Hardenbrook, from the date of the Complaint through summary judgment, is 146.7 hours, for a total fees amount of $40,277.50.  *See* Squyres Decl., Ex. C (Spreadsheet of time entries specific to Darel Hardenbrook).[5]

### 3.    UPS is Entitled to a Pro Rata Share of Fees Attributable to the Collective Defense of Plaintiffs' Claims.

Despite the dissimilarities in the factual bases underlying their claims, Orloff, Hardenbrook, and Gooch cobbled together a Complaint alleging the same legal theories: (1) retaliation in violation of Idaho public policy; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing.  *See* Dkt. # 1, Ex. A.  Given the way Plaintiffs purposely weaved together their claims, collectively pursuing UPS under a single caption, most of the time spent by Holland & Hart in defending UPS against Plaintiffs' nine claims, and their attempt to amend their Complaint to add a claim for punitive damages, are not specifically apportioned to a single Plaintiff for purposes of billing UPS.  Instead, time spent answering

---

[4] As discussed in Section III.B.2 above, to the extent the Court concludes that as of the filing of this motion, UPS is not the prevailing party, UPS requests the Court wait to decide who is the prevailing party until after the Court rules on UPS's post trial motions and the parties have an opportunity to further brief the issue to the Court.

[5] At this time, UPS does not seek attorney's fees as to Hardenbrook for any fees billed by Holland & Hart after the Court's summary judgment order.

Plaintiffs' Complaint, responding to and preparing discovery, performing research, drafting motions and responses to motions, preparing for most depositions, taking and defending most depositions, and nearly every other aspect of this case, up and until the Court issued its summary judgment order, necessarily involved work equally applicable to the defense against the claims of all three Plaintiffs.

This Court has previously held that a party seeking recovery of attorney fees need not have submitted bills which specifically separate its work between multiple defendants. *Millenkamp v. Davisco Foods Int'l*, No. CV03-439-S-EJL, 2007 WL 844880, at * 4-5 (D. Idaho March 16, 2007).  There the Court stated that "such a level of specificity is not required," and concluded that so long as billing entries which are specifically attributable to parties against whom the plaintiff did not prevail are not included in the request for fees, time entries applicable to the parties generally are a proper basis for an award under Idaho Code § 12-120(3).  *Id.*; *see also Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 337 (1st Cir. 2008) (noting that "[t]he guiding principle is equity; the district court should strive to determine the most fair and sensible solution for apportioning the fee award").  This analysis is well reasoned and particularly appropriate in cases such as this one where, due to Plaintiffs' strategic decision to file all of their factually dissimilar claims under a single caption, it was simply not possible for UPS to specifically attribute work separately to the three Plaintiffs.

UPS has therefore analyzed its bills from the date Plaintiffs filed their collective Complaint, November 2, 2007, through the Court's entry of summary judgment, December 18, 2009, and excluded from its calculation all billing entries specifically attributable to each of the three Plaintiffs individually.  *See* Squyres Decl., Ex. B (Time entries specifically attributable to Robert Orloff); Ex. C (Time entries specifically attributable to Darel Hardenbrook); and Ex. D

(Time entries specifically attributable to Paul Gooch).[6]  The remaining time entries between November 2, 2007, and December 8, 2009, that cannot be specifically attributed to Orloff, Hardenbrook, or Gooch, total 3,677.40 hours, or $875,180.00.  *See* Squyres Decl., Ex. E.  UPS then divided this amount into thirds, attributing one-third of its attorney fees to each of the three Plaintiffs, resulting in attorney fees attributable to each Plaintiff in the amount of $291,726.66.

## IV.   CONCLUSION

UPS respectfully requests this Court pursuant to Federal Rule of Civil Procedure 54(d) and the other authorities cited herein to award attorney fees against Robert Orloff in favor of UPS in the amount of $338,449.16.  This dollar amount represents the total attorney fees specifically attributable to Orloff, combined with his pro rata share of fees attributable to the three Plaintiffs' claims collectively.

UPS also requests this Court award attorney fees against Darel Hardenbrook in favor of UPS in the amount of $332,004.16.  This dollar amount represents the total attorney fees specifically attributable to Hardenbrook, combined with his pro rata share of fees attributable to the three Plaintiffs' claims collectively.

DATED this 4th day of March, 2010.

HOLLAND & HART LLP

By _____*/s/ B. Newal Squyres*_____
        B. Newal Squyres, of the firm
        Attorneys for Defendant

---

[6] UPS also reduced this number to reflect only the timekeepers listed in Sections III.C.5 and 6 above, accounted for the 11% discount provided to UPS, excluded time not billed to UPS, and excluded time billed to UPS of which UPS does not seek attorney fees.  *See* Section III.C above.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of March, 2010, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Eric S. Rossman, Esq. – erossman@rossmanlaw.com
Chad M. Nicholson, Esq. – cnicholson@rossmanlaw.com
*Attorneys for Plaintiffs Darel Hardenbrook, Paul Gooch and Robert Orloff*

<u>            */s/ B. Newal Squyres*            </u>
for HOLLAND & HART LLP

4724725_3.DOC