# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAREL HARDENBROOK, an individual, PAUL GOOCH, an individual and ROBERT ORLOFF, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED PARCEL SERVICE, CO., a Delaware corporation, <br><br> Defendant. | Case No. CV07-509-S-EJL <br><br> **MEMORANDUM ORDER** |

# INTRODUCTION

Pending before the Court in the above entitled matter are: 1) the Defendant's Motion for New Trial Due to Improper Argument of Counsel and Juror Misconduct, 2) Defendant's Motion to Strike, and 3) Plaintiff's Motion for Extension of Time.[1] The parties have fully briefed the motions and they are now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be

---

[1] Defendant has also filed a separate Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial or to Alter or Amend the Judgment. (Dkt. No. 157.) The Court will address that Motion in a separate written Order.

MEMORANDUM ORDER - 1

significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs, Darel Hardenbrook, Paul Gooch, and Robert Orloff, initiated this action on November 2, 2007 by filing a Complaint in state court against the Defendant, United Parcel Service, Co. ("UPS"), alleging retaliation in violation of Idaho public policy, breach of contract, and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 1, Att. 2.) On December 5, 2007, UPS removed the case to this Court on diversity grounds. (Dkt. No. 1.) The dispute between the parties relates to employment actions taken by UPS as to each of the Plaintiffs; Mr. Gooch and Mr. Hardenbrook were terminated and Mr. Orloff was demoted.

The Plaintiffs' complaint alleged that UPS' employment actions against them were made in retaliation to their inquiries regarding the Department of Transportation's ("DOT") hours of service regulations. (Dkt. No. 1, Att. 2, p. 2.) The DOT regulations prohibit drivers of commercial vehicles from driving if they have exceeded a specified number of work hours for a prescribed period of time. UPS denied the allegations and filed a Motion for Summary Judgment. (Dkt. No. 40.)

On December 8, 2009, this Court entered an Order granting in part and denying in part the Motion for Summary Judgment. (Dkt. No. 84.) The Court's Order dismissed all of Mr. Orloff's claims against UPS and dismissed two of the

three claims raised by both Mr. Gooch and Mr. Hardenbrook. Eventually, Mr. Gooch's claims were resolved by the parties and only Mr. Hardenbrook's claim for wrongful termination in violation of public policy remained. (Dkt. No. 97.) Thereafter, the parties filed Motions in Limine, Trial Briefs, Proposed Voir Dire, and related pretrial filings. The Court entered Orders on certain of the Motions in Limine. (Dkt. Nos. 118, 119, 123.) Trial began on January 12, 2010. The jury returned a Special Verdict on January 21, 2010 in favor of Mr. Hardenbrook awarding a total amount of damages of $1,476,367.00. (Dkt. No. 142.)

On March 4, 2010, UPS filed its post-trial Motion for a New Trial Due to Improper Argument of Counsel and Juror Misconduct. The parties each filed Memorandums, Declarations, Affidavits and other materials regarding the Motion. UPS has also filed a Motion to Strike certain of Mr. Hardenbrook's Declarations. Mr. Hardenbrook has countered by filing a Motion for Extension of Time to File Affidavits. The Court now takes up these pending Motions.[2]

## DISCUSSION

**1. Motion to Strike and Motion for Extension of Time**

UPS has filed a Motion to Strike the Affidavits of Juror 2 and 7 filed by Mr. Hardenbrook in support of his response brief opposing UPS's Motion for New Trial. (Dkt. No. 191.) The Motion to Strike argues the Affidavits should not be considered as they are untimely as provided for in Rule 59(c). Rule 59(c) states

---

[2] In addition, both sides have filed Bills of Costs and a Motions for Attorney Fees which are referred to Chief Magistrate Judge Dale. (Dkt. Nos. 152, 153, 161, 162, 163, 184.) These motions will be ruled upon following the issuance of this Order.

MEMORANDUM ORDER - 3

that "[w]hen a motion for new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The Court may permit reply affidavits." In this case, UPS filed its motion on March 4, 2010. Mr. Hardenbrook filed his response and supporting Affidavits on March 29, 2010.

Mr. Hardenbrook has in turn filed a Motion for Extension of Time in which to file the Affidavits pursuant to Rule 6(b)(1)(B) which provides that the Court may, for good cause, extend the time for doing an act where the party failed to act because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Here, Plaintiff's counsel argues its filings were timely because the Court's electronic notification generated a due date of March 29, 2010 which they rely upon as if it were an order of the Court setting such deadline. (Dkt. Nos. 158, 195.) Further, Plaintiff's counsel points to Local Rule 7.1(c) which requires responsive briefing to be filed within twenty-one days after service. As such, Plaintiff's counsel argues they filed the Affidavits timely on March 29, 2010.

The Juror Affidavits are untimely. Rule 59(c) is clear that the Plaintiff had fourteen days in which to file his opposing affidavits. The electronic notification date is an automated function of the Court's electronic filing system and does not stand as an Order of the Court. The automated date is not an order of the Court as defined in the Electronic Case Filing Procedures located on the Court's website, www.id.uscourts.gov. *See* Dist. Idaho Loc. Civ. R. 5.1(b); Electronic Case File Procedures (amended 2009), p. 9-10 at ¶ 12(A). The Plaintiff's reliance upon such

date is in error. The general briefing schedule for filing responsive materials found in Local Rule 7.1(c) likewise does not trump Rule 59(c). As such, the Motion to Strike shall be granted. Further, the Court finds the Plaintiff has failed to show good cause to extend the time for filing due to excusable neglect pursuant to Rule 6(b)(1)(B). Accordingly, the Motion for Extension of Time is denied. The Affidavits will not be considered by the Court in ruling upon the Motion.

**2. Rule 59(a) Motion for New Trial Due to Improper Argument of Counsel and Juror Misconduct**

UPS seeks a new trial pursuant to Rule 59(a) due to 1) improper argument of Plaintiff's counsel and 2) juror misconduct. Mr. Hardenbrook opposes the motion arguing Plaintiff counsel's conduct was not improper, the jury was not prejudiced, and Juror Number 4's conduct did not put extraneous evidence before the jury that prejudiced the verdict.

*A. Conduct of Counsel*

UPS asserts that Plaintiff counsel's continuous unsubstantiated representations to the jury that UPS violates DOT reporting regulations were such that the jury was improperly influenced in reaching its verdict. This is evidenced, UPS contends, by the nature and frequency of the comments, irrelevance of the comments to the issues before the jury, the manner in which the comments were treated, the strength of the case, and the verdict itself. (Dkt. No. 158.) In response, Plaintiff counters that it did not engage in misconduct, any misconduct that may have occurred was cured by the Court's instructions, UPS waived any

right to seek a new trial on this basis, and UPS has not shown that the jury verdict was the result of passion and prejudice. (Dkt. No. 177.)

### *(1) Legal Standard for Rule 59(a) Motion*

The motion is made pursuant to Rule 59(a) which states, in relevant part, "[t]he court may, on motion, grant a new trial on all or some of the issues–and to any party–...after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir.1994)); *see also Settlegoode v. Portland Public Schools*, 371 F.3d 503, 517 (9th Cir. 2004).

In evaluating any possible prejudice from attorney misconduct, we consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and verdict itself." *Hemmings*, 285 F.3d at 1193 (citation omitted). Often "a combination of improper remarks" will demonstrate prejudicial impact. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3rd Cir. 1992). "Great deference is given to the trial judge to gauge prejudicial effect of attorney misconduct." *McIntosh v. Northern Cal. Universal Enterprises, Inc.*, 2010 WL

2698747 *12 (E.D. Cal. 2010).[3] "[T]he trial judge is in a superior position to evaluate the likely effect of the alleged misconduct and to fashion an appropriate remedy." *Hemmings*, 285 F.3d at 1193.

### *(2) Analysis*

UPS's motion points to Plaintiff's counsel's continuous unsubstantiated representations that: UPS violates Federal law, DOT would not be able to properly investigate any violations because UPS does not keep records of supervisor hours, and the suggestion that the jury should "send UPS a message" and change UPS policies to protect the motoring public by awarding a substantial verdict. (Dkt. No. 158.) Such statements, UPS maintains, were only for the purpose of inflaming the passions and prejudices of the jury and done consistently, continually, and repeatedly throughout the trial beginning with the opening statements and continuing throughout the leading questions, cross examination, and closing arguments. UPS further argues, these comments by Plaintiff's counsel were the subject of UPS's motions in limine, were irrelevant and prejudicial, and were objected to by UPS's counsel. The Court sustained the objections and did not allow evidence or jury instructions regarding DOT record keeping regulations.

---

[3] *McIntosh v. Northern Cal. Universal Enterprises, Inc.*, 2010 WL 2698747 *12 (E.D. Cal. 2010) ("[T]he trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial. Because the trial judge was present and able to judge the impact of counsel's remarks, we defer to his assessment of the prejudicial impact. We recognize the trial court's superior vantage point when evaluating the possible impact of the alleged prejudicial conduct. A printed record is unable to replicate in full all the circumstances--for example, tones of voices, demeanor of witnesses and jurors and the like--that occur in the course of an unfolding trial.") (citations omitted).

MEMORANDUM ORDER - 7

UPS further argues the Jury's front pay award was punitive in nature evidencing the fact that the Jury was prejudiced and, at the suggestion of Plaintiff's counsel, sought to punish UPS for alleged violations of DOT record keeping violations. (Dkt. No. 158.)

Plaintiff's counsel counters that the subject of DOT's record keeping regulations was relevant to the retaliation claim as it went to show UPS's motivation for terminating Mr. Hardenbrook's employment and that the reason given for his termination was pretextual. (Dkt. No. 177.) Plaintiff argues his opening statement was simply argument of what he expected the evidence to show made before the Court had ruled upon the admissibility of such evidence. Further, Plaintiff disputes that any questioning regarding the record keeping regulations done during the course of the trial was such that it "permeated" the trial. Instead, Plaintiff maintains such questions, if any, were only asked of limited witnesses, Mr. Moore and Mr. Kenney, and only for a limited period. Moreover, Plaintiff notes that the Court sustained the objections to such questioning and, therefore, UPS suffered no prejudice. Finally, Plaintiff's counsel disagrees that his closing argument had an "anthem" or "theme" regarding record keeping regulation violations noting any reference to the topic was limited and supported by evidence in the record and, regardless, any error was properly handled by the Court and in the Jury Instructions.

*(a) Court's instructions*

Plaintiff argues the Court's Jury Instructions cured any misconduct that may have occurred. "At times, attorney misconduct may be too prejudicial to be cured with instructions." *McIntosh*, 2010 WL 2698747 *12 (The "cautionary instructions given to the jury proved to be insufficient to immunize the Jury from the improper and inflammatory remarks of plaintiffs' counsel.") (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 206 (3rd Cir. 1992)) and (citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995)). This was not the case here.

Though Plaintiff's counsel aggressively argued for the admission of evidence and inclusion of instructions relating to the DOT regulations, the Court was careful to allow such questioning only to the extent it went to show improper motive on the part of UPS in its termination decision; i.e. UPS fired Mr. Hardenbrook for reporting potential or alleged violations of DOT regulations in violation of public policy. The Court did not otherwise allow questioning regarding the DOT regulations or whether UPS violated the regulations and refused to include the Plaintiff's proposed instructions on the DOT regulations.[4] Instead, the Court's Jury instructions made clear that any statements made by the attorneys are just argument and not evidence and that the Court will instruct the jury on the law that applies to this case. (Dkt. No. 143, Jury Instr. Nos. 1, 3, 5, 7,

---

[4] The Court also excluded the testimony by Mark Burns and David Keeling whose deposition testimony Plaintiff sought to offer related mainly to the DOT record keeping regulations.

MEMORANDUM ORDER - 9

11, 14, 15, 17, 23, 33, and 38.) Moreover, throughout the trial the Court was careful to caution the Jury that questions and statements by counsel were not evidence where it was appropriate and necessary. Therefore, to the extent there were misstatements by Plaintiff's counsel regarding violations of DOT regulations, the Court properly cured the error before the Jury during the trial.

### *(b) UPS Waiver*

Mr. Hardenbrook also argues UPS has waived its right to raise this motion because it failed to ask for a mistrial prior to the return of the Jury's verdict. Because UPS did not move for a mistrial after opening arguments, or assert misconduct as a ground in its Rule 50(a) motion, Mr. Hardenbrook maintains UPS has waived its right to raise the argument now.

"The federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial." *Hemmings*, 285 F.3d 1193 (quoting *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986)); *see also Settlegoode*, 371 F.3d at 517. "The rationale for this high threshold is two-fold. First, raising an objection after the closing argument and before the jury begins deliberations permits the judge to examine the alleged prejudice and to admonish ... counsel or issue a curative instruction, if warranted." and "[t]he second rationale stems from courts' concern that allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error." *Id.* (citation omitted); *see also Settlegoode*, 371 F.3d at 517.

Though UPS may not have formally raised this issue in its Rule 50(a) Motion nor asked for a mistrial prior to the verdict, the record is clear that UPS objected throughout the trial to such questioning and filed motions to exclude the evidence both before trial and before closing arguments. (Dkt. Nos. 88, 90, 95, 138.) As such, the Court does not find UPS waived this argument because it cannot be said that the argument is being raised for the first time post trial.

### *(c) Strength of Plaintiff's Case and Jury's Verdict*

UPS argues the resolution of Mr. Hardenbrook's retaliation claim was a close question and that he had to rely upon improper arguments regarding the record keeping regulations in order to prejudice the Jury and prevail in this case. Mr. Hardenbrook asserts just the opposite is true maintaining that his case was strong and that the verdict was based upon substantial and competent evidence in the record, not any improper passion or prejudice.

The Court finds the arguments on both sides of the case to be strong and, thus, the Jury was faced with a close decision. The fact that it was such a close call does not necessarily mean either side's case lacked strength. Instead, it simply shows that the resolution of the case turned on findings of fact. There were facts and evidence supporting both parties' positions. The Jury's verdict required it to weigh and consider the evidence before it and make the factual findings necessary to decide the claim. The Court, having viewed the evidence and the resulting verdict, does not find that any misconduct at trial sufficiently permeated the entire proceeding such that the Jury was influenced by passion and prejudice in reaching

its verdict in favor of Mr. Hardenbrook. The Plaintiff's case was strong. The Jury had before it evidence upon which they could base the verdict they reached in this case. Moreover, the Court does not find the verdict itself yields any indication that the Jury was improperly prejudiced by any misconduct by Plaintiff's counsel.

### *(3) Conclusion*

Having had the benefit of viewing the trial first-hand and now having gone back and reviewed the trial transcript, the Court finds there was no misconduct by Plaintiff's counsel that so permeated the trial proceeding such that the Jury was improperly influenced by passion and prejudiced in reaching its verdict. At trial, the Court addressed the issue of what evidence would and would not be allowed in terms of DOT regulations. Any missteps by Plaintiff's counsel regarding the DOT regulations were not as prevalent during the trial as UPS represents. Further, where appropriate, the Court cautioned the Jury during the trial to correct any improper questioning or statements. The Court's instructions to the Jury further clarified what is and is not evidence and the law applicable to this case. The Motion is denied.

### *B. Juror Misconduct*

UPS also seeks a new trial arguing extraneous evidence was presented to the jury by Juror Number 4 which prejudiced the verdict against UPS. (Dkt. No. 158.)

### *(1) Legal Standard for Rule 59(a) Motion*

Again, Rule 59(a) states, in relevant part, "[t]he court may, on motion, grant a new trial on all or some of the issues–and to any party–...after a jury trial, for

any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The Ninth Circuit's "juror-misconduct precedents distinguish between introduction of extraneous evidence to the jury, and *ex parte* contacts with a juror that do not include the imparting of any information that might bear on the case." *United States v. Rosenthal*, 454 F.3d 943, 949 (9th Cir. 2006) (citation and quotations omitted). "Extraneous-evidence cases involve not only the introduction of evidence *per se* but the submission of extraneous information (e.g., a file or dictionary) to the jury. *Ex parte* contacts, by contrast, generally do not pertain to any fact in controversy or any law applicable to the case." *Id*. (citations omitted). This case is one of "extraneous evidence" and, therefore, it is Mr. Hardenbrook's burden to show there is no reasonable probability of prejudice to UPS despite Juror 4's conduct. *See Rosenthal*, 454 F.3d at 949.

"Extraneous-information cases...call for more searching review; we grant a new trial if 'there is a reasonable possibility that the material could have affected the verdict.'" *Rosenthal*, 454 F.3d at 949. Unlike *ex parte* cases, we generally place the burden "on the party opposing a new trial to demonstrate the absence of prejudice." *Id*. "Although the presence of extrinsic material does not always require a new trial, [citations omitted] we carefully review the circumstances and nature of the material to ensure that jurors deliberate without undue outside pressure or influence." *Id*. "Where extraneous information is imparted, as when papers bearing on the facts get into the jury room without having been admitted as

exhibits, or when a juror looks things up in a dictionary or directory, the burden is generally on the party opposing a new trial to demonstrate the absence of prejudice, and a new trial is ordinarily granted if there is a reasonable possibility that the material could have affected the verdict." *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co.*, 206 F.3d 900, 905 (9th Cir. 2000).

### *(2) Juror Number 4's Research*

In this case, shortly after the Jury retired to begin their deliberations, the Bailiff was summoned to the jury room and advised that one of the jurors, Juror Number 4, had researched a subject in relation to UPS on the internet. The Bailiff advised the Jury to stop their deliberations, immediately removed Juror Number 4 from the jury room, and notified the Court and counsel. The Court went back on the record in the presence of the parties to advise them of the issue with Juror Number 4 and discussed how to proceed. Juror Number 4 was brought into the courtroom whereupon the Court questioned him in order to flush out exactly what research he had conducted, what he saw and discovered, and what he in turn conveyed to the other jurors.

Juror Number 4 stated that the preceding evening he was online trying to catch up on work and "just Googled UPS lawsuits." When the search results came up he saw Robert Orloff's name and he then "closed it off." He went on to state that "I wasn't looking for anything. I wasn't trying to get any information." The Court asked him what was told to the other members of the Jury to which Juror Number 4 stated:

> As soon as we sat down that's what I told them. I told them exactly the same thing that when I sat down that's what I did and so we stopped right at that point. The first thing they all said is it's not going to matter one way or the other because I wasn't looking for anything. I'm not – I mean, I have no reason to do anything to sway anything one way or the other.

(Juror Number 4, Tran.) The Court then asked "I want to be absolutely certain. You're telling the parties the court and counsel that nothing came up except Mr. Orloff's name?" To which, Juror Number 4 stated:

> Just when the search and it lists everything you know lists everything. It's like every other Google search. All that stuff came up and all I saw was Orloff. I closed it out at that point. I didn't do any research. I didn't do anything to look for anything. As soon as we sat down that's what I told the jury, too....

(Juror 4, Tran.) The Court excused Juror Number 4 and asked the parties for their input. Counsel for both parties agreed with the Court that it would be most prudent to dismiss Juror Number 4 and have the remaining six jurors resume their deliberations.

### *(3) Analysis*

In support of its Motion, UPS submitted an affidavit of a computer expert, Steven Seideman, indicating he was unable to recreate the Google search as Juror Number 4 had described. (Dkt. No. 159.) UPS concludes that based on this fact, Juror Number 4 misstated the truth when he was questioned in open court and must also have misstated the truth about what he revealed to the other members of the jury. (Dkt. No. 158.) Further, UPS contends the removal of Juror Number 4 without an admonishment to the remaining jurors to not draw any inferences from the removal likely prejudiced the verdict against UPS. Plaintiff counters that UPS

MEMORANDUM ORDER - 15

stipulated to the removal of Juror Number 4 and, therefore, waived any motion for a new trial and that there is no evidence that any extraneous information was provided or considered by the remaining jurors.

The defense portrays Juror Number 4 as a cunning individual who covertly researched information prejudicial to UPS on the internet and then tainted the other members of the Jury and lied to the Court and counsel on the record. That, however, was simply not the case. Though not reflected in the bare-text of the transcript, Juror Number 4 was overly apologetic and embarrassed by the blunder he had unwittingly made. A fact that was obvious to all who were present during his questioning. Even though everyone agreed his conduct necessitated his dismissal, his demeanor while being questioned left little doubt of his truthfulness regarding the events. To assume otherwise now requires an extremely large leap from the reality of what transpired at the time of the events in question. The Court finds Juror Number 4's statements about these events to be truthful.

The Court further finds there is no indication that any extraneous material prejudiced the remaining six jurors nor any reasonable possibility any such material could have affected the verdict. *Sea Hawk Seafoods*, 206 F.3d at 905. The Google search conducted by Juror Number 4 appears to have been short-lived and of limited value. Even if the computer expert for UPS is correct that Juror Number 4's search was more involved to have yielded the results as he described in Court, the fact remains that the search was limited and the remaining jurors were not privy to any information that Juror Number 4 may have learned from the search.

The Court's immediate removal of Juror Number 4 from the jury room and ultimately his dismissal, as agreed to by counsel, thwarted any prejudice to the remaining members of the Jury.

UPS's argument that the removal of Juror Number 4 "could have been construed as a large corporation exercising its power all the way into the jury room" is a misperception of the circumstances surrounding Juror Number 4's removal. (Dkt. No. 158, p. 16.) There was no indication made to the remaining jurors that it was anyone other than the Court who dismissed Juror Number 4 and that the reason for his dismissal was the violation of the Court's instruction against conducting outside research. Moreover, the events as they transpired at the time indicate otherwise. When Juror Number 4 told the other jurors that he had done an internet search, they immediately summoned the Bailiff knowing that Juror Number 4's actions were in violation of the Court's instructions. When the Jury was told to begin their deliberations they were specifically referred to the Court's instruction prohibiting outside research. (Dkt. No. 143, Jury Instr. 10.) To assume, as UPS alleges, that the Jury held the dismissal of Juror Number 4 against UPS, is without any basis in fact.

In addition, Jury Instruction No. 21 states "[a]ll persons are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any other person." (Dkt. No. 143, Jury Instr. 21.) It is a fundamental necessity that in order for this system of justice to work, we must have faith in the jury and believe they will do as they are instructed. *See Fields v. Brown*, 503 F.3d

755, 787 (9th Cir. 2007) ("As a general rule, we presume that jurors follow the trial court's instructions.") (citing *Kansas v. Marsh*, 548 U.S. 163 (2006)); *see also Myers v. United States*, 390 F.2d 793, 796 ("The jury system as we know it can not function 'unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them.'") (citation omitted). In this case, though Juror Number 4's actions were contrary to the Court's instructions, he came forward with his mistake and, in obvious embarrassment, came clean with the Court and counsel. The Court, having been present at the time, finds there is no reason to assume or speculate that Juror Number 4 or any of the other jurors acted contrary to the Court's instructions.

As to UPS's contention that the Court should have admonished the remaining jurors to not infer anything from Juror 4's removal, neither side requested any such admonishment at the time. Nor did either side ask that the remaining six jurors be questioned regarding what Juror Number 4 had told them at the time. Further, as the Court stated on the record, the remaining jurors were advised to review Jury Instruction No. 10 and then continue their deliberations. (Dkt. No. 143, Jury Insr. No. 10.)[5] Other instructions also advise the Jury that they must take nothing the Court has said or done as any indication of what their verdict should be. (Dkt. No. 143, Jury Insr. Nos. 13, 15.) The fact that the

---

[5] Jury Instruction No. 10 states, in pertinent part, "do not do any research, such as consulting dictionaries or other reference materials, and do not make any investigation about the case on your own."

MEMORANDUM ORDER - 18

remaining six jurors were not given the admonishment suggested by UPS in its motion and the Jury ultimately returned a verdict against UPS, does not indicate the Jury was prejudice by Juror Number 4's conduct or removal. Just the opposite is true here, as it was the other jurors who immediately stopped Juror Number 4 from talking about his research and summoned the Bailiff. To have brought all of the remaining jurors back into the courtroom for questioning may have served only to further highlight and raise the suspicions of the jurors. Instead the Court, with the consent of counsel, dismissed Juror Number 4 and directed the remaining jurors to review Jury Instruction Number 10 and begin their deliberations. In doing so, there was no additional emphasis made upon Juror Number 4's action. *See United States v. Mausali*, 590 F.3d 1077, 1079-1081 (9th Cir. 2010) (district court did not error by failing to question each member of the jury for taint after dismissing a juror). In sum, because there is no indication that any prejudicial extraneous information was obtained by Juror Number 4 nor conveyed to the rest of the jurors, let along any reasonable probability that any such material affected the verdict, the Court denies the Motion.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for New Trial (Dkt. No. 158) is **DENIED**.

2) Defendant's Motion to Strike (Dkt. No. 191) is **GRANTED**.

3) Plaintiff's Motion for Extension of Time (Dkt. No. 194) is **DENIED**.

DATED: **September 3, 2010**

Honorable Edward J. Lodge
U. S. District Judge