UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAREL HARDENBROOK, an individual, PAUL GOOCH, an individual and ROBERT ORLOFF, an individual,<br><br>               Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE, CO., a Delaware corporation,<br><br>               Defendant. | Case No. 1:07-cv-00509-EJL-CWD<br><br>**AMENDED** REPORT AND RECOMMENDATION |

This matter is back before the Court after the Court's decision regarding attorney fees was appealed, reversed, and remanded for further consideration. (Dkt. 248.) District Judge Edward J. Lodge referred the matter to the undersigned for review of the attorney fee issue upon remand. (Dkt. 257.)[1] By way of background, Darel Hardenbrook, Paul Gooch, and Robert Orloff filed a complaint on November 2, 2007, against their employer, United Parcel Service ("UPS"), claiming breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of

---

[1] Because this matter arises post-judgment, the Court will issue a report and recommendation. 28 U.S.C. § 636(b)(1)(B). The initial report and recommendation has been amended herein to address Hardenbrook's Bill of Costs, (Dkt. 152), which has remained pending since March 4, 2010. Neither party brought the oversight to the Court's attention until now.

**REPORT AND RECOMMENDATION - 1**

public policy. Their claims were substantially similar and factually intertwined. On June 15, 2009, UPS filed a motion for summary judgment. On December 8, 2009, the district court granted UPS's motion for summary judgment on all of Orloff's claims, and Orloff appealed. Hardenbrook's claim for wrongful termination survived summary judgment. Gooch later entered into a settlement agreement with UPS, and his claims were dismissed by stipulation and order on December 28, 2009.

Hardenbrook's wrongful termination claim proceeded to trial, which commenced on January 12, 2010, and resulted in a jury verdict for $1,476,367 against UPS. The Court granted UPS's motion to amend the judgment, and offered Hardenbrook the choice of accepting a remittitur or proceeding to a new trial. Hardenbrook chose the remittitur. The Court then vacated the Jury's verdict, and entered an Amended Judgment of $713,169.00 on October 12, 2010. (Dkt. 211.) After entry of the judgment, but before the Court issued its amended judgment, both Hardenbrook and UPS sought fees under Idaho Code § 12-120(3) as prevailing parties on their respective claims and defenses. Hardenbrook sought fees for his successful jury verdict, while UPS sought fees for its successful summary judgment motion against Orloff. The Court denied Hardenbrook's and UPS's petitions for attorney's fees. Consequently, the Court directed that the Clerk deny the two cost bills UPS submitted proposing to tax costs against Orloff and Hardenbrook. (Dkt. 162, 163, 228 at 11, 229, 230.)[2]

The Court found that Hardenbrook had prevailed on the principal complaint he and the other two Plaintiffs pursued against UPS, while UPS prevailed against Orloff.

---

[2] The Court's prior Order did not address Hardenbrook's bill of costs, Dkt. 152.

**REPORT AND RECOMMENDATION - 2**

But the Court, in viewing the action as a whole, and in the exercise of its discretion, concluded that the claims were basically a wash, and declared no party as the prevailing party for purposes of an award of fees or costs.

The United States Court of Appeals for the Ninth Circuit reversed the Court's decision. The appellate court found that, although the Court applied the correct law, the Court's determination that, when looking at the "overall action," no party prevailed, was incorrect. Rather, the appellate court found that Hardenbrook was the prevailing party against UPS, and UPS was the prevailing party against Orloff. Based upon that determination, the appellate court instructed that this Court has "a duty to apportion to each of the parties only the attorney fees related to the claims upon which each party prevailed." (Dkt. 257 at 4.) The appellate court instructed that Hardenbrook is entitled to an award against UPS "only for the time his attorneys spent on his prevailing claim. The calculation should take into consideration that during the early stages of the litigation, before the other parties were dismissed, there was overlapping representation between Hardenbrook, Orloff, and Gooch. The attorney time for the joint representation should be reduced accordingly. Likewise, UPS is entitled to an award of attorney's fees related only to defending against Orloff. Fees which may be attributed to defending on overlapping claims by Hardenbrook, Orloff, and Gooch should be apportioned and reduced accordingly."

The appellate court has given this Court a daunting task in sorting through the attorneys' fee petitions in this case, considering the claims overlapped one another, and the same attorneys represented all three Plaintiffs while UPS presented a joint defense to

**REPORT AND RECOMMENDATION - 3**

Plaintiffs' claims. The Court understands its task as follows: (1) determine which time entries correspond to representation of Hardenbrook for the claim upon which he prevailed; and (2) reduce "accordingly" any overlapping time for joint representation. The Court is to do the same for UPS's claim of fees for its successful defense against Orloff's claims. The appellate court gave this Court no instruction as to how it should "reduce accordingly" the overlapping time spent.[3] The Court therefore interprets the issue as one left to the Court's discretion.

Both parties submitted detailed spreadsheets outlining the time spent by the respective attorneys, which the Court has examined. But Hardenbrook's claim for attorney fees is based upon the terms of his contingency fee contract with his attorneys. That contract allowed for a 40% contingent fee of any amount received or recovered if the recovery was obtained after trial had commenced. In this case, that preliminarily resulted in a contingent fee of $590,546.80, which is 40% of the jury's original $1,476,367.00 verdict. But based upon the amended judgment, a contingent fee of 40% would result in an award of $285,267.00 in attorney fees. UPS, however, appealed the amended judgment. (Dkt. 212.) On July 24, 2012, the appellate court issued an order reversing the Court's amended judgment amount, and ordered that Hardenbrook's damages should be reduced by an additional $149,615.[4] That reduction would result in an

---

[3] On July 11, 2013, the Ninth Circuit issued its Order amending the court's mandate in Orloff's appeal, number 10-35900, apportioning the fees attributable to the Orloff appeal.

[4] This Court has not yet issued a second amended judgment based upon the Ninth Circuit's July 24, 2012 Order. Additionally, the Ninth Circuit reversed and remanded for further proceedings concerning the Court's conclusion of the discount rate applied to the value of Hardenbrook's stock. Whether these further proceedings result in an additional reduction to Hardenbrook's damages is not before the Court, and the proceedings may alter the Court's conclusion in its report and recommendation.

**REPORT AND RECOMMENDATION - 4**

award of $563,554. Forty percent of that amount is $225,421.60. Alternatively, Hardenbrook's attorneys provided an estimate of the fees they would have incurred representing Hardenbrook based upon an hourly basis, which fees amounted to $307,242.49.[5]

UPS's counsel, on the other hand, charged by the hour, and submitted detailed spreadsheets setting forth the task, the time expended, the timekeeper, and the hourly rate charged. UPS seeks fees in the amount of $338,449.16 against Orloff.

The Court's analysis is set forth below.

## ANALYSIS

### 1.    Standards for Calculating Reasonable Attorney Fees

Idaho law governs the award of attorney fees in this matter because federal courts follow state law as to attorney fees in diversity actions. *See Interform Co. v. Mitchell*, 575 F.2d 1270, 1270 (9th Cir.1978) (applying Idaho law). Attorney fees were properly considered under Idaho Code § 12–120(3), which entitles the prevailing party to an award of attorney fees when a commercial transaction is the gravamen of the lawsuit. *See Erickson v. Flynn*, 138 Idaho 430, 64 P.3d 959 (Idaho Ct.App.2002).

Under Idaho R. Civ. P. 54(e)(3), the Court considers the following factors when determining the amount of reasonable attorneys' fees:

(A) The time and labor required;
(B) The novelty and difficulty of the questions;
(C) The skill requisite to perform the legal service properly and
the experience and ability of the attorney in the particular field
of law;

---

[5] The Court is referring to the total from the column labeled, "Reduced Amount," attached as Exhibit A to the Affidavit of Eric Rossman. (Dkt. 156-1 at 22.)

**REPORT AND RECOMMENDATION - 5**

(D) The prevailing charges for like work;
(E) Whether the fee is fixed or contingent;
(F) The time limitations imposed by the client or the circumstances of the case;
(G) The amount involved and results obtained;
(H) The undesirability of the case;
(I) The nature and length of the professional relationship with the client;
(J) Awards in similar cases;
(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case; and
(L) Any other factor which the court deems appropriate in the particular case.

Attorneys' fees may include paralegal fees. *See* Idaho R. Civ. P. 54(e)(1). The court is not required to make written findings as to each of the factors, but must consider them. *See Empire Fire & Marine Ins. Co. v. North Pacific Ins. Co.*, 905 P.2d 1025, 1029 (1995). Attorney's fees are generally calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate–known as the "lodestar" calculation–and then, if necessary, making adjustments to the lodestar figure. *LaPeter v. Canada Life Ins. Co. of Am.*, No. CV06–121–S–BLW, 2009 WL 1313336 *2 (D. Idaho May 11, 2009).

The controlling test for determining a reasonable hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *Welch v. Metro. Life Ins Co.*, 480 F.3d 942, 946 (9th Cir.2007). "[N]ormally the relevant legal community for determining the prevailing market rates for attorneys' fees is the community in which the forum is situated." *Gates v. Deukmejian,*

**REPORT AND RECOMMENDATION - 6**

987 F.2d 1392, 1405 (9th Cir.1993). The relevant community in this case is Boise, Idaho. *LaPeter*, 2009 WL 1313336 at *2.

In contrast, an award of standard costs in a diversity case is usually governed by Federal Rule of Civil Procedure 54(d) and the federal court's local rules. *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024, 1022 (9th Cir. 2003). Local Rule 54.1 allows for an award of costs to the prevailing party, provided that a party serve and file "a cost bill in the form prescribed by the Court" within "fourteen ... days after entry of a judgment, under which costs may be claimed." The "cost bill must itemize the costs claimed and be supported by a certificate of counsel that the costs are correctly stated, were necessarily incurred, and are allowable by law." *Id*.

## 2.     Hardenbrook's Fees

Hardenbrook argues that a contingent fee recovery is reasonable in this case based upon Idaho law. In this case, Hardenbrook sought an award of the contingent fee provided by contract of 40% of the judgment, or $590,546.80. Hardenbrook contends the fact that Hardenbrook's attorneys may recover more than calculated under an hourly fee contract does not render the contingent fee agreement unreasonable. (Mem. at 7, Dkt. 154.) As support for the fee request, Hardenbrook submitted a spreadsheet recreating the time expended that was, in his attorney's opinion, attributable to the representation of Hardenbrook. Based upon the calculations, Hardenbrook contends that an hourly fee arrangement would have resulted in attorney fees of $307,242.49, based upon hourly rates of $200 for lead counsel and $75 for paralegals.

**REPORT AND RECOMMENDATION - 7**

UPS argued that the requested contingency fee is premature and excessive, and further undertook to calculate a more reasonable measure of the hours expended on Hardenbrook's behalf. First, UPS takes issue with what it calls an "inflated hypothetical fee," contending that a request of $590,546.80 is unreasonable based upon the hourly analysis UPS undertook. (Mem. at 4—6; Ex. A; Dkt. 170.) By reducing the hours expended, UPS contends that a more reasonable hourly lodestar fee would be $135,917.48. UPS arrives at its reduction in hours by parsing out time spent upon Hardenbrook's "unsuccessful claims," considering only the wrongful termination claim proceeded to trial; and eliminating fees billed by individuals other than paralegals or for fees of a clerical nature. [6] Second, UPS contends that the fee request is premature, given that a motion for remittitur was filed shortly after the motion for fees, and had not been granted at the time Hardenbrook submitted his fee request. Finally, UPS argues that the contingency fee is unreasonable and excessive, primarily because the amount—$590,546.80—is excessive.

This Court has upheld contingent fee awards in matters decided under state law. *See Swendsen v. Corey*, No. 4:09–cv–229–BLW, 2012 WL 2049174 *3 (D. Idaho June 6, 2012) (finding the contingent fee reasonable considering the risk involved in contingency fee cases). The Court in *Swendsen* awarded fees based upon the contingency fee calculation, given it was only slightly above the amount that would have been charged if billed hourly. However, it is proper for the Court to reduce the contingent fee upon

---

[6] UPS argued also that it prevailed against Hardenbrook because only one of his claims survived summary judgment. (Brief at 4, Dkt. 161-1.) But the appellate court agreed with this Court's determination that Hardenbrook prevailed against UPS.

**REPORT AND RECOMMENDATION - 8**

remittitur. *See Ward v. Sorrento Lactalis, Inc.*, No. CV-04-006-BLW, 2005 WL 4021366 *5 (D. Idaho Dec. 22, 2005) (reducing contingent fee upon remittitur).

Here, given the Court's order reducing the jury's verdict, a revised calculation of 40% of the amended judgment amount of $713,169.00 would yield $285,267, a figure $21,975.49 less than the lodestar figure of $307,242.49 Hardenbrook later proposed. But, given the Ninth Circuit's order reversing the Court's amended judgment and deducting $149,615 from the amended judgment amount, a 40% contingent fee would be $225,421.60, which is $81,820.89 less than the lodestar figure.[7]

UPS contends a more reasonable fee is $135,917.48. Based upon the factors listed in Idaho R. Civ. P. 54(3)(3), the Court disagrees. First, UPS is not entitled to parse out "unsuccessful" claims that did not proceed to trial. That argument cannot serve as a basis for denying the fees requested. *See Winn v. Amerititle, Inc.*, No. 1:10–cv–016–BLW, 2010 WL 4904676 *2 (D. Idaho Nov. 24, 2010) (plaintiff was not required to apportion fees between claims because the causes of action stemmed from the same commercial transaction). Hardenbrook asserted alternative theories of recovery, and additionally, all of them were intertwined with the facts supporting the other Plaintiffs' claims. Apportionment among claims asserted as alternative theories of recovery under the same commercial transaction is therefore not required, and does not serve as a basis for reducing the fees. *Id.*

---

[7] Although the Court has yet to amend its judgment based upon the Ninth Circuit's order, the Court is incorporating the appellate court's order herein.

**REPORT AND RECOMMENDATION - 9**

Second, the basis upon which UPS relies for reducing the time expended is unreasonable, considering UPS applied the same methodology in attempting to parse out the time attributable to its defense against Orloff's claims. And, UPS's hourly rates are almost double what Hardenbrook's team of attorneys charged. Given that the Ninth Circuit has endorsed UPS's counsels' higher rates of up to $375 per hour for senior partners, this Court sees no reason to penalize Hardenbrook's counsel because he charges $150-$200 per hour for attorney time. *See Orloff v. UPS*, No. 10-35900, Slip. Op. at 9–10 (9th Cir. Jul. 11, 2013). The Court finds it safe to assume that, had Hardenbrook's attorneys charged $300 or more per hour as UPS's lawyers did, the "appropriate fee" according to UPS's calculations would be more in line with the $307,242.49 hourly calculation undertaken by Hardenbrook's attorneys.[8]

Turning to the Rule 54(e)(3) factors, the Court must exercise its discretion when considering the existence and applicability of each factor, giving no one factor undue weight or emphasis. *Nalen v. Jenkins*, 763 P.2d 1081, 1083 (Idaho Ct. App. 1988). Further, although Hardenbrook entered into a contingency fee contract, the Court is to award an objectively "reasonable" fee, and it "should not automatically adopt any contingent fee or contractual arrangement, but rather the fee awarded may be more or less than that provided in the lawyer-client contract." *Id.*; *See also* Idaho Code § 12-120(3); Rule 54(e)(3).

The Court has examined the spreadsheet of estimated fees Hardenbrook's counsel prepared. Time of a purely clerical nature, billed by MJG for printing, indexing, and

---

[8] UPS claims fees in the amount of $338,449.16 against Orloff, and Orloff's claims did not proceed to trial.

**REPORT AND RECOMMENDATION - 10**

verifying documents, is improperly claimed, as is some of LR's time for scanning and numbering documents. Second, the Court discounted previously undiscounted time entries by 66%, and only awarded one-third, for time spent taking depositions, preparing the plaintiffs for depositions, and propounding and reviewing discovery that pertained to all three plaintiffs. In doing so, the Court arrived at a discounted lodestar fee of $288,993.76.

The Court finds that the Rule 54(e)(3) factors support an award of fees of $288,993.76, which is more[9] than the $225,421.60 that would be awarded under the contingency fee agreement.[10] UPS argued only that the one-third contingent fee agreement was unreasonable based upon the jury's original verdict. And UPS's basis for reducing the lodestar figure is unreasonable, as previously discussed.

The $288,993.76 amount is not unreasonable in light of the time and labor required of Hardenbrook's counsel in this vigorously contested matter. Mr. Rossman is an experienced trial attorney, on par with the attorneys representing UPS, and has represented several employees against their employers in this Court. Hardenbrook successfully prosecuted his claims. While not particularly undesirable from a claims standpoint, the case was, in the Court's view, undesirable from an economic risk standpoint. Hardenbrook filed a complaint against a multi-national corporation, and the risk was large given the resources of UPS versus that of a few employees. Further, Mr.

---

[9] In *Nalen*, the Idaho Court of Appeals explained that the existence of a contingency arrangement "may be treated as a factor enhancing rather than decreasing the award, because it demonstrates a risk of nonrecovery." *Nalen*, 763 P.2d at 1084 n.5. The Court "is not prohibited from allowing recovery to the prevailing party in excess of the amount which the party is contractually obligated to pay his attorney." *Id.* at 1084.

[10] *See* note 7, supra.

**REPORT AND RECOMMENDATION - 11**

Rossman pressed on through an eight day jury trial, and eventually won a jury verdict for his client. Lastly, in comparison with the $338,449.16 in fees sought by UPS for its successful defense against Orloff's claims, which were dismissed at the summary judgment stage and which did not proceed to trial, the $288,993.76 lodestar figure for Hardenbrook's attorneys is reasonable in comparison.

Therefore, the Court in its discretion, after considering the Rule 54(e)(3) factors, recommends that Hardenbrook, as the prevailing party, be awarded attorney fees in the amount of $288,993.76.

### 3. UPS's Fees

UPS requested an award of attorney fees against Orloff in the amount of $338,449.16. UPS represented that this dollar amount comprised the total attorney fees attributable to Orloff, combined with a pro rata share of fees attributable to the three Plaintiffs' claims collectively. (Mot. at 2, Dkt. 161.) In support of its request, UPS submitted four spreadsheets. In one, UPS detailed the "collective defense fees" that could not be apportioned among any individual Plaintiff, and which totaled $875,180.00. In another, UPS delineated $46,722.50 in attorney fees "specifically attributable to Robert Orloff." In reviewing the calculations, UPS apportioned the $875,180.00 into thirds, and added one-third of that amount to the portion of fees specifically attributable to Orloff, to arrive at the sum of $338,449.16.

Orloff argues that UPS's claim for one-third of the collective defense fees was improper, and at most, UPS's claim for fees against Orloff should be no more than $46,722.50. (Mem. at 6, Dkt. 171.) Orloff further argues that the fees charged were

**REPORT AND RECOMMENDATION - 12**

unreasonable, both because of unnecessary time spent during discovery and excessive hourly rates. UPS's attorneys' rates ranged from $325-375 per hour for partners, and $175-197 for associates, which rates were higher than those charged by Plaintiffs' attorneys. Applying a reduction in the hourly rate and the time spent, Orloff contends that the $46,722.50 attributable to Orloff should be reduced to a more reasonable amount of $31,181.35. (Mem. at 12, Dkt. 171.)

Orloff therefore concedes that $31,181.35 is identifiable and awardable as fees incurred solely in relation to the time UPS spent defending against Orloff's ultimately unsuccessful claim. The Court will therefore consider $31,181.35 as a floor for the award of attorney fees, and consider the two issues Orloff raised---the hourly rates, and whether UPS should be awarded some portion of the collective defense fees.

The Court will first examine the hourly rates charged. The Court is familiar with the rates of Holland & Hart timekeepers. *See Sullivan v. Sullivan*, No. CV–09–545–S–BLW, 2010 WL 1651994 *2 (D. Idaho April 21, 2010) (approving Holland & Hart hourly rates charged in pro bono representation of client). It has been this Court's experience "that attorneys at regional firms, such as Holland & Hart, charge hourly rates at or near, but not above, the high end of acceptable rates for the Boise area." *LaPeter v. Can. Life Ins. of Am.*, No. CV–06–121–S–BLW, 2007 WL 4287489 *1 (D. Idaho Dec. 4, 2007) (approving hourly rates).[11] The hourly rates of Holland & Hart partners and

---

[11] In *LaPeter*, decided in 2007, Holland & Hart attorneys charged $405 per hour for partner Walt Bithell; $350 per hour for partner Newal Squyres; and rates for associates ranging from $175 to $185 per hour depending upon the associate's experience level.

**REPORT AND RECOMMENDATION - 13**

associates are within the range approved by this Court in *LaPeter*, and will be approved here.[12]

Similarly, this Court approved an average hourly rate of $137.19 for time spent by a Holland & Hart paralegal in *LaPeter*, finding the rate near the top end of acceptable rates, but not unreasonable. *LaPeter*, 2009 WL 1313336 at *3. In this matter, Holland & Hart paralegals billed at hourly rates ranging from $135 to $245 per hour. Ms. Vivian Barrios was the most expensive paralegal time keeper, billing at rates between $215 and $245 per hour. Ms. Karen Kinnear billed at rates between $145 and $185 per hour. Both Barrios and Kinnear worked primarily upon reviewing documents responsive to discovery requests.

UPS has provided no justification for their significantly higher hourly rate, which exceeds the $165 top hourly rate for the other paralegals on the team. Ms. Barrios's hourly rate will be reduced to $165 per hour. Ms. Kinnear did not begin billing at an hourly rate exceeding $165 until September 1, 2008, according to the spreadsheets submitted by UPS. All time by Ms. Kinnear after that date will be reduced to $165 per hour as well. Additionally, the Court deducted for time spent for which there was no description, such as the entry on July 1, 2008 by Ms. Omsberg. In so doing, the billed time is reduced from $338,449.16 to a total of $334,301.00.

Turning to the reasonableness of the time spent, the Court has considered the Rule 54(e)(3) factors. Holland & Hart attorneys are experienced and exhibited the requisite

---

[12] The Ninth Circuit also approved Holland & Hart's rates submitted in the appeal in this case, in the range of $350-$375 per hour, and cited to this Court's decision in *LaPeter*. *See Orloff v. UPS, Inc.*, No. 10-35900, Slip. Op. at 9--10 (9th Cir. Jul. 11, 2013).

**REPORT AND RECOMMENDATION - 14**

knowledge and ability to successfully eliminate several claims asserted by the three Plaintiffs prior to trial. UPS was subject to substantial monetary exposure given Plaintiffs' punitive damages claim, which UPS successfully defeated also. And, UPS successfully sought a reduction of the jury's verdict, both before this Court and upon appeal. UPS dealt with a massive amount of discovery judging from the billing records, which had to be reviewed, organized, and indexed in a database such that the documents could be accessed and analyzed by both Plaintiffs and Defendants. This discovery work is well documented in the billing records in Exhibit E, Collective Defense Fees.

Document production continued up through January of 2009, at which point the focus shifted to depositions. Where there were conferences between members of the legal team, the Court did not encounter double-billing; only one member of the team billed for the conference.[13] Mr. Squyres did not add travel time to his bill, and only billed for work performed while traveling.[14] Further, Mr. Squyres, as the most senior attorney, was responsible for litigation strategy and preparation for and attendance at depositions, which was reasonable in this case. Mr. Bennett, as a junior associate, handled research for the summary judgment briefing. Thus, although there was a large litigation team, upon review of the collective defense fees, it appears each member of the team was staffed appropriately and care was taken to avoid billing for duplicative work.[15] Nor can the Court say that fees based upon a percentage of the collective defense fees, in this case

---

[13] *See, e.g.*, Ex. E, entry for 09/30/2008 wherein Ms. Howland billed for the conference with Ms. Omsberg, while Ms. Omsberg did not.
[14] *See, e.g.*, Ex. E, entry for 1/26/2009, wherein Mr. Squyres notes travel to Chicago, and no charge for travel time unless work was performed en route.
[15] S*ee, e.g.*, Ex. E, entry for 2/20/2009, wherein Mr. Bennett begins preparation for the summary judgment briefing.

**REPORT AND RECOMMENDATION - 15**

thirty-percent, is unreasonable. The Ninth Circuit undertook this same approach when considering the portion of fees attributable to the appeals in this matter. *See Orloff v. UPS, Inc.*, No. 10-35900, Slip. Op. at 17 (9th Cir. Jul. 11, 2013). Therefore, no further reductions will be made to the Collective Defense Fees exhibit.

Turning to Exhibit B, which UPS claims are the fees specifically attributable to Robert Orloff, those fees will be reduced. It appears UPS culled all time entries wherein Orloff's name was mentioned. However, several tasks were performed and documented in the fifty-five time entries. For example, on November 9, 2007, Mr. Squyres billed 2.2 hours to "Review Complaint, letter and related documents; exchange e-mails with Holland & Hart team and Ms. Johnson regarding acceptance of service; begin analysis of defense of litigation now that Complaint is filed, note addition of Orloff." It is unreasonable to assume that the entirety of the 2.2 hours is attributable to Orloff, when he received only a passing mention. Other entries are similar.[16] But because the attorneys and paralegals block-billed their time, it is not possible to determine how much time should be attributable solely to work for Orloff. *See Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007), *cited in Orloff v. UPS, Inc.*, Slip. Op. at 16. Eighteen of the time entries appear to contain substantial work on other matters in addition to mentioning Orloff.[17] Therefore, the Court deducted portions of the time spent from those eighteen time entries, to arrive at a total of $36,407.50 for the fees attributable to Orloff.

---

[16] *See, e.g.*, 09/28/2008: "Continue online review of client documents for documents responsive to Plaintiffs' requests; quality check Orloff documents reviewed online;" 11/6/2008: "Begin draft of deposition outline for Mr. Orloff; discuss review of Jerry Frasso documents with SOmsberg; discuss case strategy with BNSquyres."
[17] *See, e.g.*, Ex. B, Entries for 11/09/2007; 03/25/2008; 8/26/2008—09/29/2008; 11/06/2008; 11/10/2008; 12/2/2008; 03/31/2009; 04/07/2009; 06/09/2009; 12/03/2009; and 12/08/2009.

**REPORT AND RECOMMENDATION - 16**

Given the above reductions, a more reasonable fee is $324,379.00.

## 4. Costs

UPS submitted a cost bill attributable to Orloff, which the Clerk denied based upon the Court's prior Order. (Dkt.163, 230.) Given the Ninth Circuit's opinion,[18] the Court will revisit that issue here. UPS requested $3,482.73 in costs, comprised of one- third of the majority of costs related to depositions and service fees, and one hundred percent of the Orloff deposition costs.[19] Orloff argues that the costs sought against him should be reduced, because the only item on the bill of costs specifically attributed to Orloff was the cost of his deposition in the amount of $1,784.50.

The costs requested are allowable in their entirety under Fed. R. Civ. P. 54 and Dist. Idaho L. Rule 54.1. However, the Court determines that the apportionment claimed by UPS is reasonable. The Court recommends that costs be awarded to UPS against Orloff in the amount of $3,482.73.

Hardenbrook submitted a cost bill on March 4, 2010, claiming 11,077.26 in costs. (Dkt. 152.) The Court did not address the cost bill in its initial Order, nor did the Clerk tax costs. UPS initially took the view that it prevailed against Hardenbrook, such that all costs should be denied. UPS did not file any other separate objection to the cost bill. The Court disagreed that UPS prevailed as against Hardenbrook, and the Ninth Circuit concurred.

Given the arguments discussed above, the Court recommends that Hardenbrook

---

[18] The bill of costs submitted by UPS to be taxed to Hardenbrook, (Dkt. 162, 229), was properly denied based upon the Ninth Circuit's decision that Hardenbrook prevailed against UPS.

[19] Costs for the deposition of Hardenbrook, as well as for depositions of other witnesses that are not listed on the Orloff cost bill, are claimed on the Hardenbrook cost bill. (Dkt. 162.)

**REPORT AND RECOMMENDATION - 17**

be awarded costs as follows: one-third of the deposition costs, with the exception of the costs for the deposition of Hardenbrook, which should be awarded at one hundred percent ($3,611.00); all of the witness fees, considering the witnesses testified at trial ($210.25); and one-third of the filing fee and copying costs ($71.84).

## CONCLUSION

The Court has undertaken a comprehensive review pursuant to the directive of the Ninth Circuit, and included review of the Ninth Circuit's July 24, 2012 Order further reducing Hardenbrook's damages. The Court concludes that Hardenbrook should be awarded a reasonable attorney's fee of $288,993.76 and costs of $3,893.09, and that a reasonable attorney's fee of $324,379 and costs in the amount of $3,482.73 should be awarded for UPS's work defending against the Orloff claim.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

Consistent with the Orders of Remand by the Ninth Circuit,

1) Plaintiff Darel Hardenbrook's Petition for Attorney Fees (Dkt. 153) be **GRANTED in Part** in the amount of $288,993.76.

2) Defendant UPS's Motion for Attorney Fees (Dkt. 161) be **GRANTED in Part** in the amount of $324,379.00.

3) Defendant UPS's Bill of Costs (Dkt. 163) be **APPROVED** in the amount of $3,482.73.

4) Hardenbrook's Bill of Costs (Dkt. 152) be **APPROVED** in the amount of $3,893.09.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **August 13, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 19**